FRED AND HAZEL O'BANNON, PLAINTIFFS AND RESPOND-
ENTS, v. JAMES, TED AND FRANK GUSTAFSON, DE-
FENDANTS AND APPELLANTS, AND LIBERTY NATIONAL IN-
SURANCE CO., DEFENDANT AND APPELLANT.

No. 9583.
Submitted April 12, 1956. Decided November 21, 1956.
303 Pac. (2d) 938.

Mr. Floyd O. Small and Mr. Clayton R. Herron, Helena, appellant.

Mr. John L. McKeon, Anaconda, Mr. C. W. Leaphart, Jr., Helena, for respondent.

Mr. Small and Mr. Leaphart argued orally.

MR. JUSTICE ANDERSON:

This is an appeal from a judgment for the respondents entered by the district court of the fourth judicial district, Missoula County. The cause was heard by the Honorable C. E. Comer, district judge, on appeal from an order of the Industrial Accident Board of the State of Montana, wherein the board ruled that the respondents, Fred and Hazel O'Bannon, were dependents within the meaning of the Workmen's Compensation Act, but were not entitled to compensation because the statute of limitations for the filing of a claim had run.

The respondents are the parents of John O'Bannon, who was killed in an industrial accident on or about July 11, 1950. At the time of his death John O'Bannon was employed by appellants James, Ted, and Frank Gustafson, who were doing business under the name Grizzly Bear Lumber Company. The company was enrolled under plan No. 2 of the Workmen's Compensation Act of Montana. The other appellant, Liberty National Insurance Company, was the insurance carrier for the employer. At the time of the death of John O'Bannon, the

Liberty National Insurance Company was doing business under the name Idaho Compensation Company.

The respondents consulted attorneys and were advised that they did not qualify as dependents within the meaning of the Workmen's Compensation Act. The respondents filed a claim for compensation July 1, 1953. In their claim they asserted that they had been dependents of John O'Bannon.

Shortly after the death of John O'Bannon, the respondents were informed by a representative of the appellant insurance company that the company would pay $250 for burial expenses, which it did.

The claim for compensation was heard by the board on September 24, 1953. It was determined as a result of this hearing that the respondents were dependents within the meaning of the Workmen's Compensation Act, but that the respondents were not entitled to compensation because the claim was not filed within the time required by statute, R.C.M. 1947, section 92-601. From this ruling the respondents appealed.

The respondents alleged, in their appeal to the district court, that their claim is controlled by the case of Gugler v. Industrial Accident Board, 117 Mont. 38, 157 Pac. (2d) 89, wherein this court held, in effect, that the payment of a medical bill stopped the running of the statute of limitations. The respondents admit that the rule in the Gugler case was changed by statute on February 28, 1945, chapter 213, section 1, Laws of 1945, if this statute is constitutional as an amendment to section 2916, R.C.M. 1935, now R.C.M. 1947, section 92-705. The Gugler case was decided on the 23rd of February, 1945, and the amendment to section 92-705 was introduced in the legislature on the 28th day of February, 1945.

The court below allowed the introduction over the appellants' objection of the Senate Journal, Twenty-ninth Session, Fifty-ninth Legislative Day (appellants' Exhibit No. 1), and a certified copy of Senate Bill No. 114 (appellants' Exhibit No. 2). The purpose of the two exhibits was to show that the amendment to section 92-705 is unconstitutional because the mandate

of article V, section 22, Montana Constitution, was not followed. It is upon the constitutionality of chapter 213 of the laws enacted by the Twenty-ninth legislative session that this appeal is based.

The admission of this evidence was not error. The serious nature of the challenge of unconstitutionality then made constituted "good cause" for allowing the introduction of this additional evidence consistent with R.C.M., section 92-834.

Both these exhibits show that Senate Bill No. 114 was introduced on the 28th day of February, 1945, without previous notice, on suspension of rules. It was then read for the first and second time and referred to Committee on Compensation, which immediately recommended passage of the bill. The report was adopted. The bill, on motion for rules suspended, "was considered correctly printed", and placed on the calendar for third reading, was read for the third time, passed and sent to the House where the same procedure was followed and the bill was returned to the Senate. The entire legislative process was had on the 28th day of February, 1945. The bill never was printed.

Article V, section 22, Montana Constitution provides:

"No bill shall be considered or become a law unless referred to a committee, returned therefrom, and printed for the use of the members."

The respondents contend that Senate Bill No. 114 was never printed within the meaning of the constitutional requirement. The district court ruled that Senate Bill No. 114 was unconstitutional in its enactment and therefore void, and judgment was entered for the respondents.

The law is too well established on the question of the supremacy of the mandate of the Constitution to cite. "Any attempt to do that which is prescribed in any other manner than that prescribed or to do that which is prohibited is repugnant to that supreme and paramount law and is invalid." 11 Am. Jur., Constitutional Law section 44, page 652.

The language of the Constitution of Montana is clear in its

requirement that, "No bill shall be considered or become a law unless * * * printed for the use of the members." The only possible conclusion then is that the legislature exceeded its authority in passing Senate Bill No. 114 without having the bill "printed for the use of the members."

It is to be noted that article V, section 22, Montana Constitution, has never been involved in litigation before this court. However, article V, section 24, Montana Constitution, which begins with the same words, "No bill shall become a law", as does section 22, and goes on to provide, "except by a vote of a majority of all the members present in each house, nor unless on its final passage the vote be taken by ayes and noes, and the names of those voting be entered on the journal", has been involved in litigation before this court on several occasions. Palatine Ins. Co. v. North Pac. Ry., 34 Mont. 268, 85 Pac. 1032; State ex rel. Gregg v. Erickson, 39 Mont. 280, 102 Pac. 336; State ex rel. Woodward v. Moulton, 57 Mont. 414, 189 Pac. 59; Barth v. Pock, 51 Mont. 418, 155 Pac. 282; State ex rel. Mc-Taggart v. Middleton, 94 Mont. 607, 28 Pac. (2d) 186.

The court early recognized the danger of reviewing legislative procedure and in State ex rel. Bray v. Long, 21 Mont. 26, 52 Pac. 645, 648, tended to follow the strict English rule of not allowing judicial review of a legislative enactment when it said:

"The presumption is that the legislature and the officers thereof did their duty, and that the enrolled bill was regularly passed. This presumption is strong, and is indulged in by the judicial branch of the government as necessary to the 'peace and good order of the state.' "

In Palatine Ins. Co. v. Northern Pac. Ry., supra, the court ruled that the legislative journal whether the constitutional requirement that the names of those voting be entered on the journal had been obeyed. The court again recognized the danger of judicial review of legislative procedure when it said, 34 Mont. at page 273, 85 Pac. at page 1033:

"The courts of the Union are hopelessly divided upon the question as to whether or not the minutes—that is, the journal—

of either house of a Legislature may be looked into to determine whether or not a bill * * * *prima facie* valid, shall be recognized as a law by the courts, although the journals may show that no such bill was in fact ever passed by the Legislature or either house thereof. The provision of the Constitution to which we refer, in our opinion would be absurd and useless if evidence may not be taken to determine whether or not the will of the people, as expressed in the Constitution, has been obeyed by their servants, the legislators.''

In State ex rel. Gregg v. Erickson, supra, the court in discussing the Palatine Ins. Co. case said [39 Mont. 280, 102 Pac. 339] :

''We felt constrained to go to that extent because of the language of section 24, art. 5, of our Constitution which provides 'No bill shall become a law * * *.' ''

A leading case holding that there can be no disregard of the mandate of the Constitution requiring that a bill be printed before it can become a law is Neiberger v. McCullough, 253 Ill. 312, 97 N.E. 660, 664. The Illinois Constitution requires that a bill and all amendments to it shall be printed before final passage. In discussing this requirement the court said :

''Where, however, the language of the Constitution is not ambiguous, it is not permissible to interpret it differently from its plain meaning, and a construction contrary to its terms, for any period of time, will be disregarded. In this case there is not the slightest ambiguity in the provision that a bill, and all amendments to it, shall be printed before it is put upon its final passage. No words or form of expression could make the provision more plain, and it can make no difference if the fact is, as asserted, that it has been disregarded by General Assemblies which were charged with the duty to comply with it.''

Constitutional mandates must be followed by the legislature ▮ and the journals may be examined to show compliance. 82 C.J.S., Statutes section 84, page 140, note 90; Andrews v. People, 33 Colo. 193, 79 Pac. 1031, 108 Am. St. Rep. 76; Standard Oil Co. v. State Board, 110 Mont. 5, 99 Pac. (2d) 229; Palatine

Ins. Co. v. Northern Pac. Ry., supra; Johnson v. City of Great Falls, 38 Mont. 369, 99 Pac. 1059.

The constitutional mandate not having been followed by the legislative body in its action on the purported statute, and this fact appearing affirmatively in the journals, the statute fails as unconstitutional.

The case of Gugler v. Industrial Accident Board was the law of the forum at the time of the death of John O'Bannon, and the statute was tolled by the payment of the funeral expenses. It follows that no other point argued by the appellant need be considered. The judgment below is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANGSTMAN, DAVIS and BOTTOMLY, concur.