No. 12419

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

JIMMY A. RICKS,

                    Plaintiff and Respondent,

    -vs-

TESLOW CONSOLIDATED and ARGONAUT
INSURANCE COMPANY,

                    Defendants and Appellants.


Appeal from:  District Court of the Eighteenth Judicial District,
              Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellants:

          Harris, Jackson and Utick, Helena, Montana.
          Vern Harris argued, Helena, Montana.

    For Respondent:

          Bolinger and Wellcome, Bozeman, Montana.
          Page Wellcome argued, Bozeman, Montana.


                              Submitted:  April 25, 1973

                                Decided:  JUL 26 1973

Filed:  JUL 26 1973

            *Thomas J. Kearney*
                        Clerk

Mr. Justice Castles delivered the Opinion of the Court.

This is an appeal from an amended judgment of July 30, 1971, and a supplementary judgment entered on October 17, 1972, entered by the district court in Gallatin County on findings of fact and conclusions of law in favor of a claimant for workman's compensation.

Through a hearing before the Industrial Accident Board on June 3, 1970, claimant Jimmy A. Ricks sought workmen's compensation, based upon his claim for compensation which had been filed with the Board over three years and seven months after the date of his accident. The Industrial Accident Board (hereinafter called the Board) denied compensation.

Claimant appealed to the district court and was awarded compensation for 500 weeks, at the rate of $50 per week, payable in a lump sum. Subsequently, the district court entered an amended order nunc pro tunc which awarded compensation for a period not to exceed 500 weeks and deleted the provision for payment in a lump sum. Defendants appealed the amended judgment to this Court.

The appeal resulted in a per curiam order, dated February 7, 1972, wherein this Court stated:

"IT IS ORDERED that the cause be remanded to the State Industrial Accident Board and that said Board conduct a hearing into the element of estoppel based upon the action or inaction of the attorneys for Teslow Consolidated while representing claimant's interests."

A second hearing was held before the Board on May 19, 1972, pursuant to this Court's order. On June 7, 1972, the hearings officer entered a memorandum opinion and findings of fact and conclusions of law denying compensation. The decision of the hearings officer was adopted by the Board by order dated July 12, 1972.

On claimant's second appeal to the district court, that court entered additional findings of fact and conclusions of law

and a supplementary judgment which reversed the decision of the Board and awarded compensation for a period not to exceed 500 weeks. Defendants appeal from the district court's amended judgment of July 30, 1971, and from the court's supplementary judgment of October 17, 1972.

The sole issue here is: Did the district court err in reversing the decision of the Board and in entering judgment for payment of 500 weeks of workmen's compensation?

On or about April 27, 1966, while in the employ of Teslow Consolidated, claimant Jimmy A. Ricks sustained an accidental injury in the nature of a puncture would below his left patella. He also complained of a foreign body in his right eye. The knee was cleansed and dressed by Dr. J.M.Brooke of Ronan, Montana, and claimant's eye was examined, but no foreign body was found. Dr. Brooke indicated claimant would possibly be off work one day, but would not incur any permanent disability.

On April 29, 1966, Ricks was seen by Dr. A. L. Vadheim of Bozeman, who indicated Ricks would be partially disabled for two weeks. Ricks was seen periodically following April 29, 1966, by Dr. Vadheim and ultimately by Dr. Francis Kelly, an orthopedic surgeon, in consultation on February 10, 1967, following which physical therapy was recommended. Dr. Kelly diagnosed Ricks' difficulty as an inflamation of the left kneecap, termed chondromalacia patella, involving the back surface lining of the kneecap and he injected the knee several times with cortisone.

Sometime after August 1, 1966, Ricks contacted Mr. H.A. Bolinger, an attorney and stockholder for two of the four Teslow Companies that owned Teslow Consolidated, who then was preparing a suit for damages against the other party or parties involved in the accident. At the time of either the first or second visit with Mr. Bolinger, Ricks engaged Bolinger to look after his legal interests in connection with the accident. Ricks was made a party plaintiff in the suit for damages along with his employer, Teslow Consolidated. This suit was eventually settled to the advantage

of plaintiffs, with Ricks receiving a net amount (after attorneys' fees and costs of some $4,100 to $4,700) of $8,800 to $8,900.

During the statutory time for filing a claim for compensation there was only one attorney (Mr. Bolinger) for Teslow Consolidated involved with claimant Ricks. Two other attorneys entered the case at varying times later, but neither was in the case within one year after the accident. Mr. Andriolo became involved when he became associated with Bolinger in July or August of 1967. Mr. Wellcome, also upon becoming associated with Mr. Bolinger, was not involved until 1969.

On December 1, 1969, over three years and seven months after the date of the accident, Ricks filed a claim for workmen's compensation.

Defendant, Argonaut Insurance Co., paid medical benefits through May 20, 1970, totaling $231. This sum represents all medical bills submitted on the claim with the exception of one bill from Dr. Kelly in the amount of $25 for a report to the Department of Labor and Industries in the state of Washington.

On April 5, 1971, the Board entered its first findings of fact and conclusions of law. In its conclusions numbered II and III, the Board held specifically:

"II. That the claimant filed a claim for compensation after the statutory period as set forth in Section 92-601, R.C.M. 1947, had expired.

"III. That the evidence is insufficient to establish that the defendant carrier because of their actions in this instant case are equitably estopped from raising the defense of the statute of limitations."

Upon the first appeal the matter was submitted to the district court on the transcript from the Industrial Accident Board and no new evidence was offered.

On June 23, 1971, the district court entered its findings of fact, and conclusions of law, reversing the Board. As a basis of reversal, the court held that defendant Argonaut Insurance Co. was equitably estopped from raising the defense of the statute of limitations, as set forth in section 92-601, R.C.M. 1947. The

court further held that defendant Argonaut Insurance Co. had a duty to obtain a claim for compensation from the plaintiff and to advise him it must be filed within one year from the date of the accident.

The facts upon which the court based its conclusions relate to the actions of Argonaut's agent, George Wood. The court found that Wood had a certain expertise in the workmen's compensation field and that his office normally followed a procedure of sending a claim for compensation form to a claimant and advising claimant he must file his claim within twelve months of the date of the accident in cases where the physician's first report or the employer's report indicates a loss of time in excess of seven days. The court found this procedure was not followed in the instant case. It further found that Wood failed to send a copy of Dr. Vadheim's first report to the Board, although Wood normally would have done so. The court did not explain how the failure to forward Dr. Vadheim's report in any way prejudiced or affected the claimant. Finally, the court based its conclusion of equitable estoppel on the fact that defendant Argonaut Insurance Co. had "notice of the continuing difficulty which the plaintiff was experiencing by and through medical reports * * *."

Defendants filed formal exceptions to the court's findings and conclusions, which were subsequently denied.

The testimony is undisputed that claimant Ricks had never had any contact whatsoever with anyone connected with Argonaut Insurance Co. up to the date of the hearing before the Board. There was nothing between claimant and the Argonaut Insurance Co. or the Board toward making a claim, prior to the actual filing of the claim. Counsel for claimant made some obscure references in the first hearing to something between claimant and attorneys for the employer, Teslow Consolidated, who were also attorneys for claimant, but any contention of anything in the nature of an estoppel in this respect was abaondoned until after this Court's

order of February 7, 1972. Counsel's letter of January 21, 1971, to the chairman of the Board stated: "* * * we will withdraw the contention which we made before the Board pertaining to an element of estoppel being based upon any action or inaction of the attorneys for Teslow, Inc. * * *" After this Court's order of February 7, 1972, claimant reasserted an issue of estoppel based upon the actions or inactions of claimant's and employer's counsel.

At the second hearing before the Board on May 19, 1972, Mr. Bolinger testified:

"Q. Then at that time, when these notes were made, did you agree to represent Mr. Ricks with any legal problems he might have as a result of the accident?

"A. I'm sure I did. He was a party-plaintiff in the accident case, and I'm sure I was representing him in whatever there was, yes.

"Q. Do you have any specific recollection at this time as to any further discussion of the industrial accident claim?

"A. I don't have any distinct recollection of it. He was off 11 days, it seems to me, and I thought he wasn't off long enough to present a claim, and he had this large family he was having to support, is all I remember about it."

On cross-examination, Mr. Bolinger testified:

"Q. In answer to Mr. Wellcome's question as to whether or not you discussed workmen's compensation with Mr. Ricks, that phase of this accident, you said, I believe, you must have discussed it 'to some extent'. Do I understand correctly you meant to the extent of these notes in Exhibit No. 1?

"A. Yes, there's a couple things in that that would have pertained to it, like the time he was off, and the reference at the bottom. I would have had to have talked about industrial accident or workmen's compensation to have written those notes.

"Q. Of course, those matters could also have pertained to any claim against the driver and owner of the tractor, could they not, loss of time and claim for medical benefits?

"A. Well, yes, but the reference there that 'Industrial paid bills', means an industrial accident had to be mentioned at the time.

"Q. But you might have been interested in that from the standpoint of a claim against the third party as owner of the tractor and driver of the tractor?

"A. That would be true.

"Q. And do I understand correctly that you don't have any independent recollection of discussing the industrial accident phase with Mr. Ricks at the time these notes were made?

"A. Other than I remember him telling me he had so much family he'd have to go back to work sooner than he thought he should because he couldn't get by on what compensation he could get. I do remember that.

"Q. You didn't make any note on that on Exhibit No. 1?

"A. No.

"Q. And that's the only thing you recall independently of this memorandum then?

"A. I think that's correct, that's the only independent recollection I have of it. I'm inclined to think that when he was only off 11 days, I told him it wasn't worth putting in a claim.

"Q. You're not sure whether you told him that or not?

"A. Well, I would think I did, but I can't remember saying the words. I remember definitely his talking about his large family, I remember that."

Claimant's recollection of any discussion of a compensation claim with Mr. Bolinger was also extremely hazy as to precisely what was said and when. In fact, claimant had testified at the first Board hearing that he had discussed the subject of the claim filing requirement within a year of the accident date with Mr. Andriolo and Mr. Andriolo had advised him as to the filing requirements.

At the second hearing, claimant changed his story and stated that he had not discussed the filing requirements until after the filing period had expired. Also, at the second hearing, claimant changed his story as to how he came to see Mr. Bolinger in the first place. Under cross-examination at the first hearing, claimant finally admitted that it was his idea to contact Mr. Bolinger and use the same lawyer as Teslow Consolidated. At the second hearing, claimant testified that he first saw Bolinger at the request of someone with Teslow Consolidated.

There is no dispute, however, to the fact that claimant retained Mr. Bolinger to represent him in connection with his

<u>injuries within the one year claim filing period.</u>

On June 7, 1972, the Board entered its findings of fact and

conclusions of law:

"<u>FINDINGS OF FACT</u>

"I. That there is no dispute that the Claimant
suffered an accidental injury arising out of and
in the course of his employment with Teslow, Inc.
on April 27, 1966, in Lake County, Montana.

"II. That the Claimant received medical benefits
pursuant to the provisions of Section 92-706,
R.C.M. 1947.

"III. That no Claim for Compensation was filed
within the statutory time for filing as required
by Section 92-601, R.C.M. 1947.

"IV. That the Claimant was summoned to the office
of Mr. H. A. Bolinger, an attorney at Law, for the
purpose of providing eye witness information to be
used in preparation of a suit for damages in a Court
of Law on behalf of the Claimant's employer, Teslow,
Inc.

"V. That Bolinger was a stock holder in two of the
four corporations that owned Teslow, Inc., and
further that Bolinger was and had been an attorney
on a retainer and additional fee basis for the Teslow
interests for a number of years prior to and at the
time of his association with the Claimant.

"VI. That the Claimant, subsequent to his meeting with
Bolinger, became a party plaintiff along with Teslow,
Inc. in a suit for damages filed in the 4th Judicial
District, Polson, Montana, on November 9, 1967, against
another party or other parties, and that Bolinger acted
as attorney in the common interests of both the Claimant
and Teslow, Inc. and further that the Claimant retained
Bolinger to represent his legal interests in connection
with the accident.

"VII. That Bolinger pursued the interests of his clients,
the Claimant and Teslow, Inc., to the point of a settle-
ment without the necessity of a court decision.

"VIII. That the Claimant lost eleven (11) days work
due to the injuries received in the accident which
occurred on April 27, 1966.

"IX. That Pursuant to the provisions of Section 92-701,
R.C.M. 1947 as this section stood in April 1966 the
Claimant would have been entitled to four (4) days of
compensation at the rate of $56.00 per week or a total
of $32.00 for temporary total disability had a timely
claim been filed.

"X. That the matter of Workman's Compensation was only
briefly discussed between the Claimant and Attorney
Bolinger and that Bolinger mistakenly believed that the
Claimant had not lost sufficient time from work to be
entitled to receive compensation.

"XI. That Attorney Andriolo, an associate of Bolinger, did not enter the case or discuss the case with the Claimant until after the statutory time for filing a claim had run.

"XII. That the preponderance of evidence fails to reveal that any of the elements of equitable estoppel, or estoppel in pais, are or were present during the statutory twelve (12) month period subsequent to the date of the accident.

"CONCLUSIONS OF LAW

"I. That the Claimant was entitled to medical benefits under the provisions of Section 92-706, R.C.M. 1947.

"II. That no Claim for Compensation was filed by the Claimant or someone legally authorized to act in his behalf within the time period described in Section 92-601, R.C.M. 1947 and as a result the Claimant is not entitled to compensation under the provisions of the Workman's Compensation Act."

Upon the second appeal to the district court, the matter was again submitted to the court on the transcript from the Board and no new evidence was offered.

On October 11, 1972, the district court entered its findings of fact and conclusions of law, reversing the Board. The court adopted its previous findings and conclusions and added thereto an additional ground for equitable estoppel based on the "actions, statements and assurances" of the attorneys for the defendant, Teslow Consolidated, who also represented the claimant.

The court, in its amended order of July 27, 1971, and re-affirmed in its supplementary judgment of October 17, 1972, held that claimant was permanently disabled as a result of his accidental injury and was thereby entitled to compensation for a period not to exceed 500 weeks. This holding was based upon the court's first findings of fact that claimant had sustained further injuries in addition to the puncture wound below his left patella. The claimant's other injuries relied on by the court are set forth in its findings of fact as "sand in his eye", "a tender left second toe", "a contusion of the left thigh", and "a mental condition * * * which manifested itself in his being afraid to drive a truck and feeling that other vehicles coming towards him were in the process of crossing over the center line so as to strike the truck which he was driving."

- 9 -

Dr. Brooke's first report, as well as claimant's own testimony, indicates that the sand in claimant's eye was nothing of significance. Claimant testified that he had a piece of glass in his eye which he removed himself. Dr. Brooke's first report indicates that he examined claimant's eye and found no foreign body. Claimant, on cross-examination, testified:

"Q. You haven't had any trouble with your
eye since this accident?

"A. No."

The only references in the record to a tender left second toe and a contusion of the left thigh occur in the initial reports and billings of Dr. Vadheim. An examination of Dr. Kelly's testimony before the Board reveals that claimant's only complaint to him was the problem with his left knee. In fact, claimant's attorney stated:

"Q. (By Mr. Harris) Maybe I can shorten my
cross-examination of the doctor, if I ask Mr.
Wellcome one question---are you claiming any-
thing in this procedure for any injury other
than to the knee?

"MR. WELLCOME: Only insofar as to what Mr.
Ricks has already testified to about the
emotional problems which he has had in driving
a truck and the fear that other trucks or cars
are coming across the center line which affects
his ability to drive also, as a result of this
accident."

As to the "mental problem", the only evidence in the record is the unsubstantiated, self-serving testimony of the claimant. There is no indication whatsoever that claimant ever sought treatment for his "problem", or, for that matter, that he ever mentioned it to his doctors. There is no medical testimony corroborating the existence of this "problem". In fact, the record is completely devoid of any medical testimony connecting this "problem" to the accident of April 27, 1966.

It is apparent the Board felt the evidence insufficient to support a finding of any other injuries when it found:

"That the medical evidence reveals the claimant is
suffering from an inflamation of the knee, termed
Chrondromalacia patella, which may possibly necessi-
tate surgery at some future time."

As set out heretofore, the issue is whether the district court erred in reversing the decision of the Board and in entering judgment for payment of 500 weeks of workmen's compensation.

It is defendants' position that the district court erred in granting any compensation whatsoever because a claim for compensation was not filed until long after the statute of limitations set forth in section 92-601, R.C.M., had expired; and there are absolutely no facts in the case which would justify the imposition of an equitable estoppel against the insurer.

This Court in Becktold v. Industrial Accident Board, 137 Mont. 119, 125, 350 P.2d 383, said:

> "If the evidence does not clearly preponderate against the findings of the Board, the district court must affirm the Board's order. Moffett v. Bozeman Canning Co., 95 Mont. 347, 26 Pac.2d 973."

Here, the question is, in the language of section 92-834, R.C.M. 1947:

> "* * * whether or not the findings of the board ought to be sustained, and whether or not such findings are reasonable under all the circumstances of the case."

In Moffett v. Bozeman Canning Co., 95 Mont. 347, 351, 26 P.2d 973, we said:

> "The case came to the district court with the presumption that the board had decided correctly. [Citing cases]"

See also: Kerns v. Anaconda Copper Mining Co., 87 Mont. 546, 289 P. 563.

Was the Board arbitrary in finding that the evidence was insufficient to establish an equitable estoppel against the defendant carrier?

This Court in Meznarich v. Republic Coal Co., 101 Mont. 78, 93, 53 P.2d 82, said:

> "The board's decision on this question can only be reversed if arbitrary and founded on no substantial evidence."

Claimant's accident of April 27, 1966 did not result in any claim for compensation being filed until December 1, 1969, or over three years and seven months thereafter. The Montana Workmen's

Compensation Act has two requirements: (1) section 92-807, R.C.M. 1947, which requires notice in sixty days after the accident; and (2) section 92-601, R.C.M. 1947, which provides:

> "In the case of personal injury * * * all claims shall be forever barred unless presented in writing * * * within twelve months from the date of the happening of the accident, either by the claimant or someone legally authorized to act for him."

This Court, deeming section 92-601, R.C.M. 1947, to be a "statute of limitations" has developed an exception known as "estoppel". This doctrine of estoppel applies where employer, insurer, or Board as the case may be, has taken some positive action which either prevents the claimant from making a claim or leads him reasonably to believe he need not file such a claim. This Court has seen fit to apply the doctrine of estoppel only where there have been affirmative acts before the statutory period has run which either prevent the claimant from filing or lead him to believe he need not do so.

The first case in Montana dealing with estoppel was Lindblom v. Employers' Etc. Assur. Corp., 88 Mont. 488, 295 P.2d 1007, where it was held that an estoppel would be applied as to the failure to file a claim where the agent of an insurance company led the worker to believe his claim would be settled. In McCoy v. Mike Horse Mining Co., 126 Mont. 435, 252 P.2d 1036, the injured workman was told by the company doctor that he had not been injured. In Levo v. Gen.-Shea-Morrison, 128 Mont. 570, 280 P.2d 1086, the injured worker was told by a company lawyer and the company personnel manager that his claim was not covered for workmen's compensation. In Gugler v. Industrial Accident Board, 117 Mont. 38, 157 P. 2d 89, the city clerk and mayor of the city of Hamilton informed plaintiff that it was not necessary for him to file a claim with the Board. In Yurkovich v. Industrial Accident Board, 132 Mont. 77, 314 P.2d 866, a Plan III case, the claimant wrote to the Board, inquiring as to what he should do about his injury and the Board led him to believe it was not necessary to file a claim.

In the instant case, claimant was never misled by anyone connected with the Board or the insurer. The undisputed evidence shows there was never any communication between the claimant and anyone representing the insurer.

Claimant's condition was fully diagnosed by Dr. Kelly within one year of the accident, and claimant knew of his condition. A review of the medical evidence shows the doctor's diagnosis has not changed and claimant's condition has not worsened. In other words, the claimant knew, within one year, the full extent of his injury.

The only affirmative act the insurance carrier took in this matter after the accident was to pay for medical expense incurred by the claimant.

Before the Board and the district court, claimant relied heavily on Gugler v. Industrial Accident Board, 117 Mont. 38, 157 P.2d 89. Although the facts substantiating an estoppel or waiver were present in Gugler, the Court based its decision upon a theory that the filing of a claim by a doctor for his services was the equivalent of the filing of a claim by the injured workman, which dispensed with the necessity of any further claim by the workman.

In its haste to abrogate the theory of Gugler, the legislature amended the Workmen's Compensation Act to provide that medical benefits were "an additional benefit separate and apart from compensation", but neglected to have the legislative bill printed. By reason of this, the Court in O'Bannon v. Gustafson, 130 Mont. 402, 303 P.2d 938, held the amendment unconstitutional. In O'Bannon, it was recognized that the 1945 legislative amendment would have changed the Gugler rule had the amendment been constitutional.

The pertinent sections have since been reenacted and recodified numerous times, so the constitutional defect of O'Bannon no longer exists. It is now clear that medical benefits are an additional benefit separate and apart from compensation. No claim for medical benefits need be made and the medical benefits will be paid during the first thirty-six months after the accident.

In Vetsch v. Helena Transfer & Storage Co., 154 Mont. 106, 460 P.2d 757, the issue was raised as to whether payment of medical

- 13 -

claims would toll the statute of limitations set forth in section 92-601, R.C.M. 1947. The Court held that estoppel was inapplicable, thereby affirming the rule that payment of medical bills does not dispense with the necessity of a claim for compensation by an injured workman.

In reversing the ruling of the Board in the instant case, the district court partially based its decision on the failure of Argonaut's agent, George Wood, to follow his own ordinary internal office procedure. The court decided in effect, that Argonaut had a duty to obtain a claim for compensation from the claimant. This is directly contrary to the plain, simple, unambiguous language of section 92-601, R.C.M. 1947:

> "* * * all claims shall be forever barred unless presented in writing * * * within twelve months from the date of the happening of the accident, either by the claimant or someone legally authorized to act for him in his behalf." (Emphasis supplied)

Thus, the duty is upon the claimant to file his claim, not upon the insurer to solicit claims. The Workmen's Compensation Act has not changed the principle that he who asserts a right has the burden of proof or the burden of proceeding. In Nicholson v. Roundup Coal Mining Co., 79 Mont. 358, 374, 257 P. 270, the Court said:

> "The burden is therefore upon the claimant to prove injury, as above defined, resulting from (1) an industrial accident, (2) arising out of and (3) in the course of the employment, and, as these terms are used conjunctively and not disjunctively in the statute, unless all three of these necessary elements are proved by a preponderance of the evidence, no liability rests upon the employer to pay compensation. [Citing cases]."

Other cases holding that the burden of establishing a right to compensation is the claimant's are: Landeen v. Toole County Refining Co., 85 Mont. 41, 277 P. 615; Woin v. Anaconda Copper Min. Co., 99 Mont. 163, 43 P.2d 663.

In Yurkovich which was a plan III case, the Court did hold that the Board had a duty to fully advise an injured workman of the claim filing requirements. But in Yurkovich the claimant wrote to the Board asking for information as to what he should do.

In the instant case there is no such request from the claimant. There was no communication whatsoever between claimant and the insurer or the Board. In fact, claimant was represented by counsel who surely should have known of the claim filing requirements. The facts of the instant case are certainly distinguishable from Yurkovich. In addition, Yurkovich was decided on the theory that the Board was a trustee of the state fund, that it acted in a dual capacity and, therefore, had a greater duty toward claimants. Defendant Argonaut is not in the same position as the Board.

As pointed out, the district court partially based its ruling on what it felt was the failure of George Wood to follow his own internal office procedure. In its findings of fact of April 5, 1971, the district court found that Wood did not file until 1970 a medical report with the Board which he had received in 1966 from Dr. Vadheim. This is immaterial to any issue of estoppel. There is no proof claimant had any knowledge that the report was not sent. Thus it was impossible for the claimant to have been prejudiced or misled. Even if the report had been sent, it is impossible to see how this would have affected the situation in any way.

In its findings of fact of April 5, 1971, the district court found that under Wood's "standard procedure" if a doctor's report indicated a claimant would be disabled, a letter would be sent advising the claimant to file a claim within one year. There is no legal requirement that the carrier must send such a letter. The burden is on the claimant to file a claim, not on the insurer to solicit claims.

At the first hearing, claimant attempted to make something of the fact that his former counsel was the same as the employer's counsel. However, as pointed out heretofore, any contention of estoppel in this respect was abandoned until after this Court's order of February 7, 1972. At the first hearing, claimant's attorney stated:

"MR, WELLCOME: Yes, let me make this clear for the
record, for the Board's record. We are not contending
that there was any overt misleading by anyone, either
Teslow or any representative of Teslow."

After hearing additional testimony on May 19, 1972, the

hearings officer observed:

"At the time the claimant engaged Bolinger to repre-
sent his legal interests in connection with the acci-
dent, he, Bolinger, became an agent of the claimant
while at the same time he was an agent for Teslow
Consolidated. (Section 2-101, R.C.M. 1947)

"The interests of the two principals were parallel
and the same in the pursuit of the action for damages,
while at the same time the interests of the two princi-
pals could have been in conflict in the pursuit of any
action relative to a Workman's Compensation Claim.

"A review of the evidence in the file and the testi-
mony at the hearings fails to disclose any indication
that this possible conflict had any influence whatsoever
on Bolinger's failure to file a Claim for Compensation
on behalf of his client and principal. He mistakenly
believed that the claimant was not entitled to compen-
sation payments and apparently gave no thought to pos-
sible future complications that may arise."

If Mr. Bolinger made a mistake in his understanding of the

law at the time or in dismissing a possible compensation claim

as not worth the effort, such mistake is attributable to claimant

and acts as a bar to any assertion of an equitable estoppel by

claimant. Section 2-209, R.C.M. 1947, states:

"* * * a principal is responsible to third persons
for the negligence of his agent in the transaction
of the business of the agency, including wrongful
acts committed by such agent in and as a part of the
transaction of such business, and for his willful
omission to fulfill the obligations of the principal."

In the instant case, claimant is the principal, Bolinger is the

agent, and the employer and Argonaut Insurance Co. are the third

persons.

This Court stated the essential elements of equitable estoppel

in Lindblom v. Employers' Etc. Assur.Corp., 88 Mont. 488, 494, 295

P. 1007:

"Generally speaking, the following are the essential
elements which must enter into and form a part of an
equitable estoppel in all of its applications: '1. There
must be conduct---acts, language, or silence--amounting
to a representation or a concealment of material facts.
2. These facts must be known to the party estopped at
the time of his said conduct, or at least the circumstances

- 16 -

must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.'" (Emphasis added)

Thus, it is essential to establish an equitable estoppel that the party sought to be estopped have knowledge that he is misleading the claimant and an intention to mislead the claimant to his detriment. Here, Mr. Bolinger testified that at the time he talked to the claimant he had a mistaken impression of the law. He did not know that he was mistaken and he had no intention of misleading the claimant. Therefore, an equitable estoppel has not been established.

Before the Board, claimant relied on the case of Levo v. Gen.-Shea-Morrison, 128 Mont. 570, 280 P.2d 1086. However, Levo is clearly distinguishable in that there a "company" attorney gave advice to the claimant; he was not an agent of the claimant as Bolinger was in the instant case.

The Board was correct in ruling that claimant was not entitled to compensation because no timely claim for compensation had been filed. The district court erred in reversing that decision.

Accordingly, we reverse and order the case dismissed.

_Wesley Castles_
Justice

We Concur:

_James T. Harrison_
Chief Justice

_Frank I. Haswell_

_John Conway Harrison_
Justices.

Mr. Justice Gene B. Daly dissenting:

I respectfully dissent to the view of the majority.

Simply, stated, the doctrine of equitable estoppel, as applied to the Montana Workmen's Compensation Act, creates an exception to the one year statute of limitations stated in section 92-601, R.C.M. 1947, if the claimant is misled or otherwise prevented from filing his claim by (1) the employer or its agent (McCoy v. Mike Horse Mining Co., 126 Mont. 435, 252 P.2d 1036 [company doctor]; Levo v. Gen.-Shea-Morrison, 128 Mont. 570, 280 P.2d 1086 [company lawyer and company personnel manager]); (2) the insurer or its agent (Lindblom v. Employer's Etc. Assur. Corp. 88 Mont. 488, 295 P.2d 1007 [insurance company agent]); or (3) the Industrial Accident Board or its agent (Yurkovich v. Industrial Accident Board, 132 Mont. 77, 314 P.2d 866 [agent of the board]).

The testimony of Mr. Bolinger, in hearing before the Board, quoted in the majority opinion, demonstrates that claimant Ricks relied upon Mr. Bolinger to resolve his industrial accident case. The following additional testimony by Mr. Bolinger in the hearing before the Board demonstrates the misrepresentation made to Ricks:

"Q. Did Mr. Ricks ask you to file a claim.

"A. I wouldn't think he asked me to file a claim. I don't think he would have known whether he should or not. The thing was discussed, but when he filed a claim I don't think he said that. He didn't have another attorney, and I was the one that knew the facts about his case. I did discuss workmen's compensation to the extent of whether or not he wasn't relying on anybody else as far as a claim was concerned, and actually I thought---I was under the impression, unless you were off 2 weeks, it wasn't worth filing a claim. That's the recollection I have about it.

"Q. You think you may have advised him that it was hardly worth fooling with?

"A. Yes."

The quotation in the majority opinion from Lindblom enumerating the essential elements of equitable estoppel is misleading because of the omission of the remaining five sentences in the quoted paragraph. They are:

- 18 -

"'It will be seen that fraud is not given as an essential requisite in the foregoing statement. It is not absolutely necessary that the conduct mentioned in the first subdivision be done with a fraudulent purpose or intent, or with an actual and fraudulent intention of deceiving the other party; nor is this meaning implied by any of the language which I have used. The adoption of such an element as always essential would at once strike out some of the most familiar and best established instances of equitable estoppel. Undoubtedly a fraudulent design to mislead is often present as an ingredient of the conduct working an estoppel; but this only renders the result more clearly just, and, if I may use the expression, more conclusive.' (2 Pomeroy's Eq.Jur., 4th ed. 1644.) This language does not conflict in any way with what was said by this court in Waddell v. School District, supra." (Emphasis added)

The district court, in its disposition of this case, recognized the advice given to Ricks by the attorney representing both Ricks and Teslow concerning his workmen's compensation claim was a misrepresentation of material legal facts. It does not appear that this misrepresentation was made intentionally nor fraudulently, but that is not a necessary component for the application of the equitable estoppel principle. Ricks did not know the true facts of the law concerning his claim, and he reasonably and predictably relied on the misrepresentation made to him, to his substantial detriment. The attorney-client relationship existent between the attorney and the defendants herein, at the time the misrepresentation was made, precludes them from taking advantage of the consequences of that misrepresentation.

This Court in its application of the law of estoppel in Levo v. Gen.-Shea-Morrison, 128 Mont. 570, 576, 280 P.2d 1086, stated:

"The doctrine of equitable estoppel is a flexible one, founded in equity and good conscience; its object is to prevent a party from taking an unconscionable advantage of his own wrong while asserting his strict legal right. Seemingly the only strict legal right we are asked to adhere to is the statute which was passed solely for the benefit of the employer and the insurance carrier, i.e. Statute of Limitations. * * *

"Certainly, if there is any circumstance wherein the doctrine of equitable estoppel should be extended, it is in matters concerning an injured workman, where the law itself says that the Workmen's Compensation Act shall be construed liberally."

- 19 -

This Court in Newman v. Kamp, 140 Mont. 487, 490, 374 P.2d 100, stated:

> "In light of the foregoing findings of fact, we must keep in mind the following well-established rules concerning scope of review. We have held that this court will not reverse the finding of the district court except where the evidence clearly preponderates against it. [Citing cases] Similarly, we stated in Birnie v. United States Gypsum Co., 134 Mont. 39, 44, 328 P.2d 133 (1958), that our duty is to determine whether there is any substantial evidence in the record to justify the conclusion of the court."

I find the decision of the district court to be supported by ample and substantial evidence and I would affirm the judgment of the district court.

Justice.