No. 91-488

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

LEROY G. MEIDINGER,

          Claimant, Respondent and Cross-Appellant,

   -vs-

WESTERN ENERGY COMPANY,

          Defendant and Appellant.

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court,
               The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Robert T. O'Leary, Attorney at Law, Butte, Montana

        For Respondent:

        James E. Gardner, Attorney at Law, Billings, Montana


                           Submitted on Briefs:   May 28, 1992

                                      Decided:   July 9, 1992

Filed:

                                 Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a July 12, 1991 judgment of the Workers' Compensation Court reinstating Leroy G. Meidinger to temporary total disability benefits from the date of termination and continuing until maximum healing is reached, past due benefits are to be paid in a lump sum. In addition, Meidinger is entitled to ongoing medical care including physical therapy and massage as well as psychological therapy. The Workers' Compensation Court found that the claimant, Meidinger, is not entitled to a twenty percent penalty, but that he was entitled to reasonable costs and attorney's fees as provided by § 39-71-611, MCA. To this judgment Meidinger cross-appealed. We affirm.

The following issues are presented for review:

1. Whether Western Energy Company properly terminated Meidinger's temporary total disability benefits in January 1989 and, accordingly, he is not entitled to restoration of benefits as of that date nor costs and attorney's fees.

2. Whether the Workers' Compensation Court erred when it determined that Meidinger was entitled to reinstatement of temporary total disability benefits, physical and psychological therapy and massage, costs and attorney's fees.

Meidinger is a thirty-four-year-old employee of Western Energy Company (Western) whose work history includes truck driving, shovel oiler and construction. In 1983, he began work as a field mechanic for Long Construction at the Colstrip power plant site. In 1985, Western took over the tasks performed by Long Construction and

2

claimant continued his employment as a shop mechanic for the next two years for Western. Prior to June 11, 1986, Meidinger took and passed a physical examination.

On June 11, 1986, Meidinger and two co-workers were assigned to rebuild an oar crusher that had recently been repaired. Meidinger was injured while attempting to cross from one side of the crusher bin to the other while stepping on an iron bar which bisected the rectangular bin. His foot slipped and he fell, striking his leg on the cross-bar while grabbing the side of the bin with his hands. Meidinger experienced immediate pain in his left leg and low back. He timely reported the injury to Western and claims for compensation and medical benefits were completed and filed.

For the next two and one-half years, Meidinger received medical benefits relating to alleged injuries he sustained from the above-described accident. Meidinger began medical treatment with chiropractor Dr. Roger Dahl who saw him three days after the accident. Over the course of the two and one-half years after the accident, and in addition to Dr. Dahl, Meidinger was treated by three chiropractors, three orthopedic surgeons, one neurosurgeon, six neurologists, one psychiatrist, and one physical therapist. Meidinger has undergone diagnostic procedures including three CT scans, two myleograms, three MRIs, multiple plain x-rays, and one EMG study; all of which were negative for organic, objective findings to verify any back or disc problems.

Following the accident, Meidinger received temporary total disability benefits for the week following his injury. He worked

3

for the next six months until sometime in December 1986, when he discontinued work complaining of low back and leg problems; he again began receiving temporary total disability benefits until January 25, 1989.

In a report to Western dated December 23, 1988, Drs. Shaw and Williams, reported that they could find no objective evidence of structural disease of Meidinger's spine, could not find evidence of damage to the nerves, nor could they find any neurological abnormalities. Dr. Shaw's report advised Western that he could find no objective medical explanation for Meidinger's pain, that any medical conditions attributed to the accident of June 11 were at that time stable and that Meidinger had reached maximum healing. Dr. Shaw imposed no restriction on Meidinger's activities and could find no reason why he could not return to full normal activity. Based upon the examinations of Drs. Shaw and Williams, Western, as required by law, gave Meidinger a fourteen-day notice of termination of benefits and advised him to return to his mechanic's job at the Rosebud Mine on January 23, 1989. Meidinger failed to return to work thereby terminating his seniority with Western in accordance with the collective bargaining agreement under which he was employed.

Meidinger continued to be treated by Dr. Nelson, a neurologist in Billings, after the termination of his bi-weekly compensation benefits. Western continued to pay medical benefits for subsequent examinations and treatment as well as for any prescription drug charges Meidinger incurred.

Western argues that it justifiably terminated Meidinger's

4

benefits on the basis that there was no medical evidence introduced at the hearings by either Meidinger or Western that disclosed any objective medical reason for Meidinger's complaints, including why he favored his left leg while standing or walking. It is Western's contention that it retained two acknowledged Billings experts, Drs. Williams and Shaw, to conduct independent medical examinations and additional tests in order to determine if there were any medical reasons for Meidinger's complaints; the doctors found no reason why Meidinger could not return to work.

I.

That Meidinger failed to prove by a preponderance of the evidence that any physical or psychological injury he now suffers is caused by his occupational injury on June 11, 1986.

Western objects to the Workers' Compensation Court's finding that Meidinger suffers from a mixture of psychological and physical problems related to his injury and that he is entitled to the restoration of benefits from January 1989, the date of termination, until maximum healing is reached. Western cites Hutchinson v. Pierce Packing Co. (1985), 219 Mont. 18, 710 P.2d 64; Frost v. Anaconda Co. (1985), 216 Mont. 387, 701 P.2d 987; Ricks v. Testlow Consolidated (1973), 162 Mont. 469, 512 P.2d 1304; Currey v. 10 Minute Lube (1987), 226 Mont. 445, 736 P.2d 113. See also Dumont v. Wickens Bros. Const. Co. (1979), 183 Mont. 190, 598 P.2d 1099.

We note that in view of the fact that Western relied on Dr. Shaw's report of Meidinger's condition, we concur with the Workers' Compensation Judge's finding that the report does not justify termination of benefits. In his December 1988 report to Western,

5

Dr. Shaw stated in part:

> I believe that any medical conditions directly attributable to [Meidinger's] accident of June 11, 1986 are at this time stable and have reached a maximum medical benefit. No further medical workup appears indicated. No further medical treatment appears warranted. I would anticipate no need for any surgical interventions now or in the foreseeable future. I would not anticipate any conditions directly related to that accident would progress or deteriorate in the foreseeable future. Strictly as it relates to conditions directly attributable to that accident, I would assess no impairment rating in accordance with the American Medical Association. I would impose no restrictions on his activity. I can find no medical reason which would prevent him from safely returning to full normal activity.
>
> I would note that this man may have a psychologic condition which warrants evaluation and treatment. I cannot clearly attribute such a psychologic condition to his accident of June 11, 1986.

In addition we note that two doctors reviewed the record of Meidinger's employability as of January 1989. Dr. Dahl, a chiropractor and the first professional who treated Meidinger, and Dr. Cooney, a neurologist, disapproved of Meidinger's returning to his previously-held job with Western. Dr. Cooney in his report of September 1989 stated:

> I believe . . . [Meidinger] is experiencing and has been experiencing significant pain in the low back and left leg, which resulted in his abnormal gait and posture. In view of the longstanding nature of that problem, he subsequently developed significant flexion contractures of the left lower extremity which preclude him [from] standing or walking in a normal fashion. Further, the abnormalities of stance and gait have likely aggravated his low back pain. This appears to be a vicious cycle. I do not expect to see rapid improvement in these symptoms even with appropriate and effective physical therapy for the low back and left lower extremity. I suspect that he will require at least 6 months of intensive physical therapy before significant improvement in these conditions occur. I would emphasize that Mr. Meidinger has the potential to be returned to his preinjury state. I think that he is quite frustrated at

6

this point, in view of his pain and physical limitations. I have attempted to reassure him that with appropriate therapy, that I would expect these conditions to improve substantially. He appears to be a very candid and credible man. I do not believe that he is exaggerating his symptoms, or their effect on his life.

The Workers' Compensation Court in Conclusions of Law Numbers 2, 3, and 4 noted:

2. Claimant is presently temporarily totally disabled and entitled to reinstatement of temporary total disability benefits from the date of termination and continuing until maximum hearing is reached.

Section 39-71-116(19), MCA, as it read at the time of claimant's injury was as follows:

(19) "Temporary total disability" means a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker is as far restored as the permanent character of the injuries will permit. Disability shall be supported by a preponderance of medical evidence.

Given the reports of Dr. Cooney and Dr. Nelson as well as the physical therapist, it is clear to the Court that claimant's physical condition as it relates to his low back and leg is treatable with physical therapy and massage.

Dr. Shaw, who provided what amounted to an unequivocal release based on claimant's physical exam, nonetheless noted the ongoing psychological component of his condition and did not question its authenticity or relationship to the June 1986 injury.

In our review of this record, the Court is convinced that much of claimant's physical condition relative to his muscle contraction and pain in the leg is psychological in origin. However, the claimant's psychological condition is equally compensable as related to the injury. (See Schumacher v. Employers Mutual Liability Ins. Co., 175 Mont. 411, 574 P.2d 987 (1977).) The conversion reaction recognized by Doctors Lovitt, See, Robinson, Shaw, Nelson, and Newman is compensable as it is related to the physical injury of June 11, 1986. Because of that psychological response, claimant has developed a serious physical problem with his leg and low back.

What is significant as it pertains to temporary

7

total disability benefits is that the psychiatrist Dr. Newman believes the psychological condition is treatable and Dr. Cooney and others believe the physical component is equally treatable by therapy and massage. Indeed, it appears that according to Dr. Cooney, six months of therapy may be sufficient. When the defendant terminated benefits in January 1989, it relied on the report of Dr. Shaw and others. However, we conclude that the mixture of the psychological component and the physical problems manifested in response, are not at maximum healing and are compensable.

The claimant must cooperate and participate in both the physical therapy program prescribed as well as treatment for his psychological disorder. Any failure to do so may result in a suspension of benefits per section 39-71-605, MCA. [Emphasis in original.]

3. The medical benefits are to continue and shall include the payment of the psychological and physical therapy treatments discussed herein.

4. The claimant is not entitled to a twenty percent penalty per section 39-71-2907, MCA.

Given the disparity of accident descriptions, the multiple medical exams and reports which all proved essentially negative, we do not believe a penalty is warranted [under § 39-71-2907, MCA]. . . .

. . .

The question of unreasonableness is considered on a case by case basis. Up until Dr. Cooney's report, the medical evidence preponderated in favor of a conclusion that claimant had minimal or no objective evidence to preclude him from working. As such, a genuine dispute existed which the Court believes does not warrant a penalty. Wight v. [Hughes Livestock Co.] [194 Mont. 109], 634 P.2d 1189 . . . (1981).

The Workers' Compensation Court is affirmed.

John Conway Harrison
_____
Justice

8

We concur:

_____

_____

_____

_____
Justices

9