LINDBLOM, APPELLANT, *v.* EMPLOYERS' LIABILITY ASSURANCE CORPORATION, RESPONDENT.

(No. 6,706.)

(Submitted November 8, 1930. Decided December 5, 1930.)

[295 Pac. 1007.]

490

*Messrs. Molumby, Busha & Greenan,* for Appellant, submitted a brief; *Mr. Philip G. Greenan* argued the cause orally.

*Messrs. Freeman, Thelen & Freeman,* for Respondent, submitted a brief; *Mr. J. P. Freeman* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

This is an appeal from a judgment of the district court vacating and annulling an award of compensation to Peter Lindblom, made by the Industrial Accident Board.

On July 13, 1927, claimant was injured in the course of his employment while employed by Johnson Motor Company. Employers' Liability Assurance Corporation, Ltd., is the insurance carrier. On February 15, 1928, Lindblom filed a claim for compensation with the Industrial Accident Board. The insurer answered, admitting claimant's employment and that he was injured during the course of his employment, but alleged as an affirmative defense that the claim was barred by the provisions of section 2899, Revised Codes 1921, in that it was filed more than six months after the date of the accident. After hearing, the board awarded compensation to claimant. Thereafter the insurer's petition for a rehearing was denied and it appealed to the district court. On the hearing on appeal additional testimony was introduced by the insurer and thereafter the district court set aside and annulled the award made by the board, and held that claimant was not entitled to compensation, for the reason that the claim was not filed within six months from the date of the happening of the accident.

The determinative question is whether, under the circumstances disclosed, the insurer is estopped from asserting that the claim was not filed within the time specified in section 2899, Revised Codes 1921. This section provides: "In case of personal injury or death, all claims shall be forever barred unless presented in writing under oath to the employer, the insurer, or the board, as the case may be, within six months from the date of the happpening of the accident."

It is contended by the insurer that a compliance by the claimant with the provisions of this section "is mandatory and jurisdictional to the very existence of his right to maintain this proceeding to compel payment of compensation," and, since it appears that the claim was not filed within the six

months' period, that claimant cannot recover. On the other hand, claimant insists that the insurer by its conduct is estopped from asserting the limitation of section 2899, supra.

Upon this issue the board found the insurer "to be fully responsible for the delay in the filing of the claim because Mr. Lindblom's affairs, so far as this claim was concerned, were placed in the hands of the Moon Agency, the agents of the Employers' Liability Assurance Corporation, Ltd. The set of circumstances surrounding the situation with respect to this claim and another claim made by Peter Lindblom support this view," and after a careful analysis of the evidence concluded, as a matter of law, that "every act of defendant insurance carrier tended to and did mislead the claimant, Lindblom. The claimant was made to feel secure and defendant at no time resisted his claim. On the contrary, defendant acknowledged it on claimant's numerous visits to the agent's office for settlement. Lindblom could not help but believe that he was to be paid the compensation due him by the Employers' Liability Assurance Corporation. The representations, admissions and actions of the agents of the company induced him to believe that his claim was accepted, and that it was only a matter of routine until he received his check. Estoppel surely arises in this case."

Assuming that the evidence sustains the findings of the board, we think the conclusion that the doctrine of equitable estoppel should be applied in this case is unassailable. "Equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, or contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy. This estoppel arises when one by his acts, representations or admissions, or by his silence when he ought to speak out, intentionally or through

culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth, and to deprive the party who has acted upon it of the benefit obtained. When a party unjustly contrives to put another in a dilemma and to subject him to necessity and distress and he acts one way, it is not for the wrongdoer to insist that he should have acted another way." (21 C. J., sec. 116, p. 1113.)

Subdivision 3 of section 10605, Revised Codes 1921, which says that "whenever a party has by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it," is but a crystallization into statutory form of the rule above stated, and forms the basic principle of equitable estoppel. (*Waddell* v. *School District*, 74 Mont. 91, 238 Pac. 884.)

"Equitable estoppels operate as effectually as technical estoppels. They cannot in the nature of things be subjected to fixed and settled rules of universal application, like legal estoppels, nor hampered by the narrow confines of technical formula. So, while the attempted definitions of such an estoppel are numerous, few of them can be considered satisfactory, for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case." (10 R. C. L. 689.)

Generally speaking, the following are the essential elements which must enter into and form a part of an equitable estoppel in all of its applications: "1. There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these

facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it. It will be seen that fraud is not given as an essential requisite in the foregoing statement. It is not absolutely necessary that the conduct mentioned in the first subdivision should be done with a fraudulent purpose or intent, or with an actual and fraudulent intention of deceiving the other party; nor is this meaning implied by any of the language which I have used. The adoption of such an element as always essential would at once strike out some of the most familiar and best established instances of equitable estoppel. Undoubtedly a fraudulent design to mislead is often present as an ingredient of the conduct working an estoppel; but this only renders the result more clearly just, and, if I may use the expression, more conclusive." (2 Pomeroy's Eq. Jur., 4th ed., 1644.) This language does not conflict in any way with what was said by this court in *Waddell* v. *School District,* supra.

Does the evidence bring the instant case within this rule? We think it does. It appears that subsequent to the injury here involved, claimant received another injury; he went to the office of the Moon Agency, where a claim was prepared by the agency, and left there. Later a check in settlement for that injury was forwarded by insurer to the Moon Agency and delivered to claimant by Mr. Comings, one of the owners and the representative of the agency. The injury of July 13 did not immediately impair the vision of the eye, but soon

after the accident claimant began to take treatment from Dr. Butler, who was paid by the insurer. He continued treatment until the loss of vision was determined. When Comings delivered the check in settlement of the subsequent injury, claimant asked for settlement for the injury to his eye; Comings told him, "We will take care of it. There is a man coming to take care of it for you," and for him to wait. The representative did not come and claimant visited the office of the Moon Agency for a settlement. "I asked him [Comings] how I was going to get a settlement on the eye. I went up for the purpose of making a settlement and he told me then to wait, there was a man coming to take care of it." At a later date a representative of the Moon Agency directed claimant to a doctor for the purpose of procuring an X-ray of the injured eye. In so doing, claimant might reasonably conclude that his claim was being acted upon and that he had done everything required of him. After the X-ray had been obtained, claimant visited the office of the Moon Agency a number of times, but only the stenographer was there. When he next saw Comings, the six months' period had expired and claimant was directed to insurer's attorneys, who prepared the claim for compensation, but he was advised at the time that the claim was late. Claimant testified that he relied upon the representations made by Comings and did not know that a written claim was required to be filed within six months. This testimony is not contradicted.

Comings, testifying on behalf of the insurer, admitted that claimant had called at the office of the Moon Agency a number of times in connection with a settlement for the eye injury, but he did not deny that he told him that a representative was coming or that he requested him to wait. All that he said was that he had no recollection of such conversations. And this is not surprising; a busy man can hardly be expected to remember conversations had six or seven months before, and especially since Comings testified that "it is an every-day occurrence with us [Moon Agency], people coming in all of the time asking about their compensation."

In *Lasby* v. *Burgess*, ante, p. 49, 289 Pac. 1028, this court said: "The testimony of a witness that he does not remember whether a certain event took place does not contradict in any degree positive testimony that it did occur."

Comings further testified on direct examination before the board: "Q. You have the authority to take care of this claim in connection with Mr. Mulroy? A. We take care of them in our office." The evidence shows a well-established custom in making claim for compensation against the insurer. Claimants call at the office of the Moon Agency, where claims are made out upon printed forms furnished by the insurer and by the agency delivered to the state agent. Checks in payment of such claims are sent to the agency and it in turn delivers them to the respective claimants. That this was the custom and known by insurer cannot be denied. So well had the custom become established that "it is an every-day occurrence with us [Moon Agency], people coming in all of the time asking about their compensation." That is exactly what was done regarding the subsequent injury to claimant and for which compensation was paid. Why the practice was not followed in the instant claim is not explained. Claimant went to the office of the Moon Agency, not once, but upon several occasions, for the purpose of getting a settlement of his claim; yet, contrary to the established custom, he was advised, "We will take care of it," to wait, that a representative of the insurer was coming to settle it, and then, upon his first visit after the expiration of the six months' period, he was referred to insurer's attorneys, who advised claimant that his claim came too late.

Whether a representative of insurer was coming out for the purpose of making settlement with claimant was known only to it, and not known to claimant. That Comings intended that claimant should rely upon the representations made, that he did so and was misled to his prejudice is apparent. Claimant was justified, in view of all the circumstances, in believing that insurer would pay the compensation due and that no

written claim would be required. When the representative of insurer did not arrive, as promised, it was the duty of Comings to advise claimant of that fact before the expiration of the period of limitation, if a written claim was desired. (21 C. J. 1150.)

All of the elements of equitable estoppel were clearly estab- lished and the findings of the board are amply supported by the evidence. Indeed, counsel do not question the findings of the board or the sufficiency of the evidence to establish equitable estoppel, but insist that the doctrine does not apply in Work- men's Compensation cases. With this contention we cannot agree.

The Workmen's Compensation Act was enacted for the benefit of the employee, and we think it clear that section 2899, supra, limiting the time within which a claim can be made under it was designed for the benefit of the employer. This being true, we can see no sound reason why the em- ployer or insurance carrier, for whose benefit that section was enacted, may not so far waive these provisions that they are estopped to insist upon its protection. Similar conclusions were reached in *American Mut. Liability Ins. Co.* v. *Hamilton,* 145 Va. 391, 135 S. E. 21; *Greeley Gas & Fuel Co.* v. *Thomas,* 87 Colo. 486, 288 Pac. 1051; *Kettering Merc. Co.* v. *Fox,* 77 Colo. 90, 234 Pac. 464; *Mulhall* v. *Nashua Mfg. Co.,* 80 N. H. 194, 115 Atl. 449.

That an employer may waive, or by his conduct be estopped from asserting, the benefit of statutes similar to our section 2899, supra, is recognized in *O'Esau* v. *E. W. Bliss Co.,* 188 App. Div. 385, 177 N. Y. Supp. 203; *Twonko* v. *Rome Brass & Copper Co.,* 224 N. Y. 263, 120 N. E. 638; *Georgia Casualty Co.* v. *Ward,* (Tex. Civ. App.) 220 S. W. 380; *Ohio Oil Co.* v. *Industrial Commission,* 293 Ill. 461, 127 N. E. 743; *Mc- Clenahan* v. *Oklahoma Ry. Co.,* 131 Okl. 73, 267 Pac. 657; *Katsanos* v. *Industrial Commission,* (Utah) 267 Pac. 781; *Industrial Com.* v. *W. A. Hover & Co.,* 82 Colo. 335, 259 Pac. 509; *Red River Lumber Co.* v. *Pillsbury,* 174 Cal. 37, 161 Pac. 982; *United States Fidelity & G. Co.* v. *Pillsbury,* 174

Cal. 198, 162 Pac. 638; *Tribune Co.* v. *Industrial Com.*, 290
Ill. 402, 125 N. E. 351; *Morin's Case*, 122 Me. 338, 120 Atl.
44; *Kirkley* v. *General Baking Co.*, 217 Mich. 307, 186 N. W.
482; *Utah-Delaware Min. Co.* v. *Industrial Com.*, (Utah) 289
Pac. 94; *Long* v. *Watts*, 129 Kan. 489, 283 Pac. 654; *Kraemer*
v. *Mergenthaler Linotype Co.*, 198 App. Div. 60, 189 N. Y.
Supp. 193.

This conclusion does not conflict with the ruling of this
court in the case of *Chmielewska* v. *Butte & Superior Min. Co.*,
81 Mont. 36, 261 Pac. 616, for the reason that the question
of estoppel was not involved in that case. That decision must
be read in the light of the question then under consideration,
for "it is a rule of universal application that general ex-
pressions used in a court's opinion are to be taken in con-
nection with the case under consideration." (*State ex rel.
Walker* v. *Jones*, 80 Mont. 574, 60 A. L. R. 551, 261 Pac.
356.)

But it is contended by the insurer that the Moon Agency
was not its agent, but a broker, and "had no power or au-
thority whatsoever to settle or adjust claims, and did not settle
or adjust any claims for compensation," and, consequently,
it is not bound by any statements or representations made by
Comings. Upon the hearing before the board Comings testi-
fied that Moon Agency was a local agent for insurer, and had
authority "to take care" of compensation cases. Upon the
hearing before the district court Comings, as well as the
state agent, testified that the Moon Agency was only a broker;
but whether local agent or broker is of no importance. From
what has been said regarding the evidence we think it clear
that the Moon Agency did not have actual authority to bind
insurer; yet the proof satisfactorily establishes that it clothed
the agency with ostensible authority sufficient to enable it to
bind its principal as to third persons who in good faith relied
and acted upon such apparent authority.

"Ostensible authority is such as a principal, intentionally
or by want of ordinary care, causes or allows a third

person to believe the agent possesses.'' (Sec. 7947, Rev. Codes 1921.)

''Where a principal makes it possible, through his acts, for his own agent to inflict injury, the result of such injury should not be passed on to innocent persons who have dealt with the agent in good faith under his apparent authority. The law forbids the principal to deny authority in the agent which his own conduct has invited those with whom he was dealing to assume he possessed. In such a case a principal is bound by his acts and estopped by his own conduct from denying the authority of the agent to act. (*Robinson* v. *American Fish & Oyster Co.*, 17 Cal. App. 212, 119 Pac. 388.)'' (*Henry Cowell Lime & C. Co.* v. *Santa Cruz County Nat. Bank*, 82 Cal. App. 519, 255 Pac. 881.)

The judgment is reversed and the cause remanded to the district court of Cascade county with direction to enter a judgment affirming the findings and award of the Industrial Accident Board.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and ANGSTMAN concur.

Rehearing denied February 12, 1931.