MASON MORRIS, Plaintiff and Respondent, v. HOWARD G. LANGHAUSEN, Defendant and Appellant.

No. 11801.
Decided July 21, 1970.
As Amended on Denial of Rehearing
Aug. 19, 1970.
472 P.2d 860.

Joseph P. Hennessy, Billings, for defendant and appellant.
Hibbs, Sweeney & Colberg, Horton B. Koessler, Billings, for plaintiff and respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

An appeal from a judgment entered for the plaintiff in the thirteenth judicial district, Yellowstone County. Hon. Charles Luedke presiding without a jury.

The subjects of this case are two partially paid promissory notes given by the defendant Howard G. Langhausen, appellant herein, to Joe Steffes, d/b/a Joe's Trailer Sales of Baker, Montana. The notes were given as down payments on two trailers defendant contracted to purchase. Each note was payable to Joe's Trailer Sales, one in the amount of $1,000, the other $1,500 and both due in 1 year at 8% interest. Defendant signed purchase orders for the two trailers on October 8, 1965. The smaller trailer was 17 feet wide and the purchase price was $7,500; the larger was a 24 foot trailer, purchase price $9,000. The smaller trailer was on the lot at Baker and was delivered by Steffes at defendant's request to Conrad, Montana. However prior to such delivery, defendant on October 14, 1965 signed a retail installment contract on this trailer. This contract was sold by Steffes to the Michigan National Bank of Grand Rapids, Michigan.

The larger trailer, not being in stock, had to be ordered from the factory in Mississippi and Steffes testified he told defendant delivery would take from 60 to 90 days. During the first week

of January 1966 the trailer was delivered to Sidney, Montana, where Steffes had a sales lot. Although denied by defendant, Steffes' brother and business partner at Sidney testified that defendant visited the sales lot twice after the trailer arrived; the first time when he inspected the trailer with Steffes' brother, the second time when he was observed looking at the trailer. The record indicates defendant also signed a retail installment contract for this trailer on January 8, 1966, the assignee being the same Michigan National Bank. In considering the credibility of defendant's testimony, it should be noted that he conveniently forgot he had signed the contracts, though he did not deny his signature on them.

As a part of the original sales agreement defendant agreed to deliver to Steffes a coin operated phonograph valued at $1,000.

There is dispute as to whether this phonograph cancelled the $1,000 note, as claimed by defendant, or whether $100 was to be deducted from each note each month until the $1,000 was exhausted, as claimed by Steffes. The $1,000 credit was used, as noted in a bookkeeping entry, to credit each note with $100 monthly payment for five months. Defendant did not demand return of the $1,000 promissory note upon delivery of the phonograph or at any other time, but did acquiesce to the $100 per month deduction. It was partially on this basis that the trial court's decision was adverse to defendant.

On May 5, 1966 the two notes executed on October 8, 1965 and representing down payments, were assigned by Steffes to Mason Morris, plaintiff and respondent herein, as part payment for the latter's business. Before accepting the two notes Morris had a credit check made on defendant. In order to further assure himself as to the value of these notes, Morris, Steffes and defendant had a brief meeting at Glendive. At this meeting defendant recognized his obligation on the notes and agreed to pay Morris by mailing him monthly payments. At no time during this meeting did defendant disclaim any liability on the notes,

nor did he give Morris any indication that they would not be paid. Certainly if he had, Morris would not have accepted the assignment.

Prior to October 8, 1966, the due date of the notes, Morris sent several letters to defendant asking for payment but received no reply. When Morris finally contacted defendant by telephone, defendant stated that he was not going to pay the alleged amounts due on the notes. In March of 1967, Morris and Steffes went to defendant's home and attempted to get payment but defendant disclaimed any obligation on the $1,000 note claiming that the delivery of the phonograph cancelled it. He disclaimed liability on the $1,500 note because of alleged failure of Steffes to deliver the larger trailer.

In a well written memorandum supporting his decision Judge Luedke explained that in light of the facts he could not accept defendant's story.

Appellant on appeal presents three basic issues which we will discuss in turn.

Issue No. 1. Appellant alleges the trial court erred in overruling defendant's objection to the introduction of plaintiff's exhibits No. 5 and 6. Exhibits No. 5 and 6 are facsimiles of the retail installment contracts signed by defendant. Basically appellant claims that they should not have been admitted into evidence because they are not the originals and therefore are not the "best evidence". Appellant has correctly stated the rule from Cohen v. Clark, 44 Mont. 151, 119 P. 775 and the statutory authority in sections 93-401-13, 93-401-12 and 93-1101-9, R.C.M. 1947, requiring the original of any writing to be produced. The accepted rule is:

"[W]here proof is to be made of some fact recorded in a writing, the best evidence of the contents of the writing is the document itself, and that proof of a lower degree amounts to secondary evidence, which will be received only where nonproduction of the writing is property accounted for". 65 ALR2d 349.

Thus, a photostatic or letter press copy would amount to secondary evidence.

However, in the instant case the instruments offered were not photostatic or letter press copies, but were carbon copies made at the exact time as the original or "ribbon" copies. This type of copy known as "duplicate original" or carbon copy of an installment contract. This duplicate original or carbon copy results when an order for merchandise or bill of lading, etc., is written on a pad consisting of carbon paper between the sheets thereof so that the first and subsequent impressions are the same. Thus, the duplicate has all the formalities of the first sheet. Therefore the exception arises to the rule requiring the introducing party to produce the original absent a valid explanation. 29 Am.Jur.2d, Evidence §§ 487, 488.

While we have not previously squarely faced this question in Montana, this Court did say in dictum that the rule of duplicate or carbon copies is accepted in Montana. In Rogness v. Northern Pacific Ry. Co., 59 Mont. 373, 383, 196 P. 989, 991, this Court said:

"It happened, however, that the station agent, in the use of his carbon, failed to place the carbon over the blank for signature of the shipper on the under sheet, so that when the shipper signed the original contract, no impression was made of his signature upon the carbon copy. Such being the case, the carbon copy did not become an original contract, *as is usual when two complete and identical instruments are made at the same time.*" (Emphasis supplied).

Therefore, in this case even though the respondent did not produce the first sheets of the retail contracts, exhibits 5 and 6 were admissible under the rule. See 65 ALR2d 348.

Issue No. 2. This issue is divided into three contentions:

(a) Appellant contends the $1,000 note was cancelled by delivery of the phonograph. The trial court found the facts did not support this contention but rather that the value of the phonograph, $1,000, was to be discounted on both notes at $100

per month. The uncontradicted testimony reveals the trial court to be correct and in light of these facts the finding of the trial court will not be disturbed. If the phonograph was intended to cancel the $1,000 note, surely appellant would have requested its return.

(b) Appellant contends no collection can be had on the $1,500 note because respondent is not a holder in due course and since the larger trailer was repossessed the consideration for the note was gone thus rendering it uncollectable. Since both trailers were repossessed, this argument should be directed toward both notes.

It is a recognized principle of law that where there is a repossession pursuant to the terms of a contract any notes or sums due under its terms are not enforceable simply because the repossession of the property destroys the consideration for the notes. Johnson v. Sanderson, 132 Mont. 451, 318 P.2d 248. Conversely, where the retail sales contract does not provide that the property shall be held for notes or other obligations, recovery can be had on the notes even though the property has been repossessed. Johnson v. Sanderson, supra; Notti v. Clark, 133 Mont. 263, 322 P.2d 112; Franz v. Hair, 76 Utah 281, 289 P. 130; 83 A.L.R. 990; 47 Am.Jur., Sales §§ 962.

In the instant case the retail installment contracts are of a conditional nature. Title to the trailer houses was to remain in the holder of the contracts until the buyer had fully performed his payment obligations of the time balance plus insurance costs and credit service charges. Nowhere in these contracts are the two notes sued upon recited as being secured by ownership of the trailer houses. Therefore, the trailer houses stand as security for the time balance, insurance and service charges only. Placing these facts in the light of the established law, as cited above, the trial court correctly held that the notes were collectable even though the trailers had been repossessed.

From the findings of fact and conclusions of law where the trial court found that appellant had not supported his con-

tentions with convincing evidence, the notes in question would be collectable even if Joe Steffes was the holder of the notes. If the notes are enforceable in the hands of Joe Steffes, it logically follows that they are enforceable in the hands of respondent. The facts previously set forth show respondent to be a holder in due course.

(c) It should be noted that in considering appellant's plea of an estoppel that the trial court found no need to reconsider it under the fact situation of the case.

Equitable estoppel is used to promote justice, honesty, fair dealing and to prevent injustice. This Court in Lindblom v. Employers' Etc. Assur. Corp., 88 Mont. 488, 494, 295 P. 1007, said:

"Generally speaking, the following are the essential elements which must enter into and form a part of an equitable estoppel in all of its applications: 1. There must be conduct—acts, lauguage, or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estoppel at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it."

If this defense were to be made available to either of the parties in the instant case, it would go to the respondent for clearly the appellant's conduct at the May 5th meeting created an estoppel—against him. The trial court properly did not consider appellant's contention.

Issue No 3. Appellant claims error by the trial court in its refusal to modify the judgment or in the alternative to grant a new trial. As a basis for his motion for modification or in the alternative a new trial, appellant submitted a photostatic copy of what he claimed to be the original installment contract covering the larger trailer. When this is compared with plaintiff's exhibit 5 it reveals that appellant's proposed exhibit was incomplete in that the photostatic copy of the retail installment contract did not properly reproduce the date. The copy on file at the Registrar of Motor Vehicles showed the date to be January 8, 1966. This discrepancy is not sufficient cause to either modify the judgment or grant a new trial.

In light of the evidence presented we find no alternative but to support the trial court in all respects. Accordingly, the judgment of the trial court is affirmed

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and HASWELL concur.