No. 84-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

ARTHUR WASSBERG,

       Claimant and Respondent,

  -vs-

ANACONDA COPPER COMPANY, a/k/a
ANACONDA MINERALS CO., Employer,

    and

ANACONDA COPPER COMPANY, a/k/a
ANACONDA MINERALS CO.,

       Defendant and Appellant.

_____

APPEAL FROM:  The Workers' Compensation Court, The Honorable Timothy
              Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Michael J. McKeon, Anaconda, Montana

    For Respondent:

    Leonard Haxby, Butte, Montana

_____

Submitted on Briefs:  Nov. 29, 1984

Decided:  April 2, 1985

Filed: APR 2 1985

_Ethel M. Harrison_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from an order of the Workers' Compensation Court, holding that the employer-defendant was estopped from asserting the one year statute of limitations provided in section 39-71-601, MCA as a bar to claimant's request for compensation under the Workers' Compensation Act. We reverse.

The facts leading to this appeal are as follows: The claimant, Arthur Wassberg was employed by the Anaconda Company as an underground miner on an intermittent basis from 1956 to 1981, with one three year period in the Army, and numerous other interruptions apparently due to claimant's own choice.

On June 30, 1973, claimant suffered an injury when he "was putting in stulls and [he] fell off the ladder and twisted [his] back." He reported this accident to his shift supervisor and went to a local chiropractor, Dr. West, for treatment. The Anaconda Company paid all of the bills for this treatment. The claimant also filed a "Claim for Compensation" under the Workers' Compensation Act. In that claim, he reported that he had suffered prior industrial injuries to his head, back and hips.

At trial, claimant testified that he missed three days of work after the 1973 accident. His work records admitted into evidence included vouchers, signed by the claimant, that indicate that he missed work and received compensation for more than three weeks. In the July 17, 1973 "Claim for Compensation" claimant filed for the June 30, 1973 accident, he certified that he was "still off." In any event, the record shows that claimant received approximately three weeks of temporary total benefits under the Workers' Compensation Act; from July 2, 1973, to July 23, 1973.

Claimant returned to work on July 23, 1973. On July 22, 1974, he had another accident. A rock fell from a hanging wall and struck claimant on the back, knocking him over. He reported the accident to his boss, Cliff Newstrand, who filled out a written "Report of Alleged Injury." On the report Newstrand stated that he did not advise Wassberg to get medical treatment. Claimant's testimony at trial, however, was to the contrary; he stated that Mr. Newstrand "told me to go to the doctor and that slip was enough for the company to pay the bills." Claimant again went to see Dr. West, he was not charged for the treatment, so he assumed that the Company paid for it. Claimant testified at trial that after the 1974 accident, he had "a burning sensation down along side of the legs." At times, he stated, he could not even walk. Apparently though, from claimant's "Service Record," he did not miss any work because of the 1974 accident. He worked until November 28, 1975, and was then laid off.

In 1976, while still laid off, Mr. Wassberg went in to talk to Tom Bugni who was at the time a claims officer in the industrial accident office for the Anaconda mines. He went in at that time because he was so "crippled that [he] could hardly move." He told Mr. Bugni of the 1974 accident and requested further medical care. Bugni authorized medical care at the Company's expense. At the 1976 examination, claimant curiously told the doctor that his injury was from an accident where "I was climbing a ladder, and the ladder pulled loose, and I fell down a raise"--the accident that occurred in 1973 not 1974.

After receiving medical treatment in 1976, claimant continued to be laid off until August 10, 1979. He then was called back to work and remained employed until again laid

3

off on June 21, 1981. This action arose in 1982. Claimant's counsel wrote to Anaconda alleging that claimant was continuing to have problems with his back stemming from the 1974 injury, and requesting further medical care and compensation under the Workers' Compensation Act. The claims officer denied that the Company had knowledge of any injury except the 1973 injury for which Wassberg had already received compensation. As to any other accident, the Company denied liability for compensation because no claim had been filed within the one-year statute of limitations period provided for by section 39-71-601, MCA.

Claimant's reply contended that although no formal claim for compensation had been filed, the Company nonetheless knew about the injury because of the accident report and by the fact that it had paid the medical bills incurred shortly after the accident and for subsequent treatment in 1976. These facts, the claimant asserted, showed either that the Company had accepted liability, or the statutory period was waived. The Company did not change its position.

The matter came to trial on September 14, 1983. At trial, Mr. Wassberg testified that his understanding about the procedures necessary to perfect a Workers' Compensation claim was that "as long as they filed the industrial slip on the hill that you were covered for the rest of your life." He testified that he was surprised that this was not the case, stating " . . . when the law came out we didn't think nothing about that we had to refile or nothing." Mr. Wassberg further stated that no one had ever told him that his 1974 claim would not be honored, including Mr. Bugni, whom he talked to in 1976. Mr. Wassberg did not testify to

4

any specific misrepresentations made to him that led him to these beliefs.

On cross-examination, Mr. Wassberg admitted that he had filed a previous claim for compensation, separate from any medical benefits, on the 1973 injury. As to any claim for compensation for the 1974 injury, claimant testified as follows:

> "Q. [By Mr. McKeon] Well, the question is or the--You did not file a claim for compensation after the 1974 injury; did you?
>
> "A. No, I never did.
>
> "Q. You haven't filed a claim to this day?
>
> "A. No, I haven't."

The Workers' Compensation Court held for Mr. Wassberg. It found that; "[t]he claimant has satisfied the requirements of the Workers' Compensation Act, section 39-71-601, MCA and the employer is estopped from denying the claim on that basis." The court cited the six elements of equitable estoppel set forth in Lindblom v. Employers Liability Assurance Corp. (1930), 88 Mont. 488, 295 P. 1007 and applied them to the findings. In regard to those elements, the court stated:

> "Here the conduct of the employer is as follows: Newstrand knew of claimant's injury, but at no time informed claimant of the need to file a claim. Likewise, when claimant visited with Bugni some two years later, Bugni never advised claimant of the necessity to file a claim, through the evidence clearly shows that the employer knew of claimant's seeking medical care for his injury. Clearly, 1 and 2 of the Lindblom test is met."

The court also found the other four factors of Lindblom were met.

5

The parties raise the following issue on appeal:

Did the Workers' Compensation Court err in holding that the doctrine of equitable estoppel prevents the employer from asserting the statute of limitations provided in section 39-71-601, MCA?

Initially we must reiterate the standard of review in matters such as this. We look at the Workers' Compensation Court's order, and its findings and conclusions, in two ways. As to questions of fact, we are limited to examining the record to determine whether it contains substantial credible evidence to support the court's findings. If this quantum of evidence is in the record, we will defer to the trier of fact's resolution of the factual dispute. Ridenour v. Equity Supply Co. (Mont. 1983), 665 P.2d 783, 40 St.Rep. 1012; Wise v. Perkins (Mont. 1983), 656 P.2d 816, 40 St.Rep. 1. If it is a question of law, or how particular findings of fact apply to the law, our scope of review is not so limited. In such a case, the appropriate standard of review is simply whether the lower court's interpretation of the law is correct. We are not bound by the lower court's conclusion and remain free to reach our own. Sharp v. Hoerner Walforf Co. (1978), 178 Mont. 419, 584 P.2d 1298; Anderson v. Carlson's Transport (1978), 178 Mont. 290, 583 P.2d 440. The issue in this case is one of law. We accept the following relevant findings of fact made by the lower court:

> "6. On July 22, 1974 while in the course and scope of his employment with the defendant, claimant was struck on the back by a rock which fell from a wall. (Claimant's testimony; Exhibit No. 1). At the time, claimant was working in the Steward mine. Claimant reported the incident to his boss, a man by the name of C. Newstrand. Other than reporting the incident to Newstrand, claimant did not discuss the incident with any representative of the employer until he talked with Tom Bugni of the Company.

6

"7. Bugni suggested claimant see a doctor, which claimant did. At no time did the claimant ever pay any medical bills related to his injury. The employer did pay for the medical expenses related to the 1974 incident.

"8. At the time of trial, the claimant had not filed a claim for compensation.

"9. Exhibit No. 1 is titled Report of Alleged Injury. It is a record of the employer, signed by claimant's boss on July 22, 1974. That exhibit discloses that claimant informed Newstrand that he had been hit on the back by a falling rock on July 22, 1974 while working. It described the injury as 'bruises.' It notes the parts of body injured as the upper back. The information in Exhibit No. 1 was known to the employer as early as 1974.

"10. Claimant has never requested the Division of Workers' Compensation to waive the period for filing a claim for compensation pursuant to Section 39-71-601, MCA."

We disagree with the lower court's application of these facts to the law.

Section 39-71-601, MCA (and, as codified at the time claimant's injury occurred, R.C.M. 1947, 92-601) sets forth the statute of limitations for workers' compensation proceedings:

"Statute of limitations on presentment of claim-waiver. (1) In case of personal injury or death, all claims shall be forever barred unless presented in writing to the employer, the insurer, or the division, as the case may be, within 12 months from the date of the happening of the accident, either by the claimant or someone legally authorized to act for him in his behalf. (2) The division may, upon a reasonable showing by the claimant of lack of knowledge of disability, waive the time requirement up to an additional 24 months."

The filing requirement is mandatory, and compliance with the time limits is essential to the action. Miller v. City of Billings (1976), 171 Mont. 91, 555 P.2d 747. We recognize that this provision, like all others in the

7

Workers' Compensation Act, is to be construed liberally in favor of the claimant. Section 39-71-104, MCA; Bowerman v. Employment Security Commission (Mont. 1983), 673 P.2d 476, 40 St.Rep. 2062; cf. Chmielewska v. Butte & Superior Min. Co. (1927), 81 Mont. 36, 261 P. 616, Grosfield, Montana Workers' Compensation Manual (1979), §5.22. But this liberal construction does not allow us to disregard clear statutory provisions or to use it to the point of repealing or abrogating a statute. Grimshaw v. Larson (Mont. 1984), 691 P.2d 805, 41 St.Rep. 2123; Klein v. Ind. Wholesale Assoc. Grocers (1975), 167 Mont. 341, 538 P.2d 1358; Davis v. Industrial Accident Board (1936), 92 Mont. 503, 15 P.2d 919.

The exception provided for in (2) of section 39-71-601, MCA, is not at issue here. Claimant-respondent raises it on appeal but we do not find in the record factual support for this argument, and we will not consider it when it was not raised below.

The exception to 39-71-601(1), MCA is that the one year limitation may be waived by the employer by acts or representations giving rise to an equitable estoppel. In Lindblom v. Employers Liability Assurance Corp. (1930), 88 Mont. 488, 295 P. 1007, we set forth the elements necessary to find an estoppel:

> "Generally speaking, the following are the essential elements which must enter into and form a part of an equitable estoppel in all of its applications: '1. There must be conduct--acts, language, or silence--amounting to a representation or a concealment of material fact. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention,

or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.'" 88 Mont. at 494, 295 P. at 1009.

A common situation where estoppel arises is:

". . . where the injured worker was paid by his employer sums equivalent to Workers' Compensation benefits which in effect lulled the injured worker into failure to timely file for Workers' Compensation."

Bowerman v. Employment Security Commission, 672 P.2d at 478, 40 St.Rep. at 2064, citing Frost v. Anaconda Co. (Mont. 1982), 645 P.2d 419, 39 St.Rep. 879 and Jaeger v. Stauffer Chemical Co. (Mont. 1982), 645 P.2d 942, 39 St.Rep. 919. This exception does not apply here. First, in Frost, we held that ". . . [w]e do not believe medical payments to be sufficient compensation to warrant tolling the statute of limitations [in this instance]." 645 P.2d at 422, 39 St.Rep. at 882. Thus, in this case, the payment of claimant's medical bills does not estop the Anaconda Company from raising the statute of limitations bar. See also Vetsch v. Helena Transport and Storage Co. (1969), 154 Mont. 106, 460 P.2d 757, (payment of medical bills does not dispense with the necessity of a claim for compensation by an injured worker). We have also held that certain "payment plans" for injured workers separate from the Workers' Compensation Act's payments can estop an employer from asserting the one year bar. In Jaeger v. Stauffers Chemical Co, supra, the claimant was injured on the job and could not perform his

normal duties. The employer had a policy of asking injured workers to stay on the payroll, if necessary, at less strenuous tasks, in order to reduce the cost of lost-time accidents. Claimant there continued to work at a less strenuous task for the same amount of pay he received before and did not file an accident claim. We held there that this policy was a "plan" and resulted in a sufficiently implied recognition of the claimant's disability so as to estop the employer from asserting the one year bar. The rationale of Jaeger does not apply here, nor does the result. Here, claimant continued to work at full pay, but the record is bare of any evidence that he did so at a reduced level of work, or that he did not perform any of his assigned duties.

Specifically addressing the Lindblom elements, we find that, as a matter of law, the first was not met. The Workers' Compensation Court held that "Newstrand [claimant's boss] knew of claimant's injury, but at no time informed claimant of the need to file a claim." Additionally, the court found that "when claimant visited Bugni some two years later, Bugni never advised claimant of the necessity to file a claim." Claimant argues that this "silence," in the face of notice of the injury, is sufficient to meet the first element. We disagree. A review of several recent cases addressing the same issue illustrates why.

Frost v. Anaconda Co. (Mont. 1982), 645 P.2d 419, 39 St.Rep. 879, is a case almost on all fours with this one. There, the claimant, also a miner, slipped and fell off an ore shovel at the Anaconda Company's Berkely Pit mine. The claimant at that time did not feel he was injured and completed the rest of his shift. At the insistence of his boss, he filed a report on the incident. No report of the accident was forwarded to the Anaconda claims office since the

10

claimant did not require any immediate medical attention. More than a year after the accident, claimant began to lose the function of his legs due to the injury. He filed a claim and it was denied by the Company because the statute had run. The Workers' Compensation Court then:

> ". . . found that the Company should have known claimant was eligible for workers' compensation and that its silence regarding the . . . facts amounted to a concealment of material facts." 645 P.2d at 422, 39 St.Rep at 881.

We affirmed the Workers' Compensation Court in that case not on the grounds that the elements of equitable estoppel were met, but rather that the claimant's receipt of payments under the Company's METRO plan tolled the statute--in the same manner as discussed above. Frost first presented us with the question of just what "silence" in this circumstance is. Though we did not answer it there, subsequent cases further developed this concept.

In Devlin v. Galusha, Higgins & Galusha (Mont. 1982), 655 P.2d 979, 39 St.Rep. 2378, we rejected a claimant's contention that the employer "should have informed" the claimant about her right to file a claim. There, the claimant was an office worker who twisted her knee on the job. She required subsequent medical treatment, but was able to return to work. Shortly after returning to work, she quit for other reasons. Before leaving, her supervisor asked her whether she wanted to file a claim. She replied: "Good God, no." Six years later, she did file a claim for the injury. Citing the general rule that "[e]stoppel has no application where the omission of the party claiming estoppel brought about the problem." 655 P.2d at 981, 39 St.Rep. at 2381, citing, First Security Bank of Bozeman v. Goddard (1979), 181 Mont. 407, 417, 593 P.2d 1040, 1046, we held that her

11

employer did nothing to encourage her not to apply for benefits. Secondly, we rejected claimant's argument that, "her employer should have made greater efforts to inform her of her rights." In the support of that conclusion we cited the rule set forth in Ricks v. Teslow Consolidated (1973), 162 Mont. 469, 512 P.2d 1304:

> ". . . the duty is upon the claimant to file his claim, not upon the insurer to solicit claims. The Workmen's Compensation Act has not changed the principle that he who asserts a right has the burden of proof or the burden of proceeding." 162 Mont. at 483, 512 P.2d at 1312.

In Devlin we simply held that the employer's inquiry in light of knowledge of the injury was sufficient to discharge its duty under the Workers' Compensation Act, and that under the circumstances, because Ms. Devlin "chose not to pursue the matter" and that the employer "did nothing to encourage her not to apply for benefits" 655 P.2d at 981, 39 St.Rep. at 2381, there was no estoppel. The question of whether such affirmative action or inquiry is necessary, was not presented as in the instant case. Devlin is helpful here in two regards. First, it stands for the continuing viability of the Ricks rule quoted above. Parenthetically, as to that rule, it must be noted that it was the controlling case at the time Mr. Wassberg's accidents occurred. Second, it shows that for an estoppel to arise, more than mere mention of availability of a claim, or simple inquiry by the employer, is necessary--a holding that implies the type of "silence" that is at issue here, is not a firm ground on which to find an estoppel.

In McKaskle v. Industrial Com'n. of Arizona (Az. 1982), 659 P.2d 1313, the Arizona Supreme Court discussed the

12

doctrine of equitable estoppel in workers' compensation situations. The court stated:

> "Questions of estoppel can arise in a wide variety of situations. Most common are those in which the employer or carrier says to the injured employee in effect, 'Don't worry we'll take care of you,' thereby 'lulling' the employee into inaction until the filing period has passed." 659 P.2d at 1315, 1316.

The issue presented in McKaskle did not involve a "claimant's unilateral mistake," 659 P.2d at 1316. This is an important distinction, between a claimant's mistake and an employer-induced mistake, 659 P.2d at 1316, citing 3A Larson, Workmen's Compensation Law §78.47. As an example of an employer-induced mistake, the Arizona court cited our case of Levo v. General-Shea-Morrison (1955), 128 Mont. 570, 280 P.2d 1086. Levo was apt authority for McKaskle because the "inducement was the same--a representation by a claim officer to a claimant that he has "no claim" as a matter of law. In both cases, this assertion (in both cases, legally incorrect), induced the claimant into foregoing further action.

Finally, in our most recent case on this point, we further elaborated on the situation where an estoppel arises. In Davis v. Jones (Mont. 1983), 661 P.2d 859, 40 St.Rep. 570, the claimant's husband, a ranch hand, became unconscious while chipping a water hole on an ice covered reservoir. His employer sent him home and suggested he see a doctor. He instead went to see some friends. That night he died at home of a heart attack. The exchange that occurred between the employer and the decedent's wife subsequent to his death was the following:

> "On February 17, 1980, the claimant went to the employer for her husband's last paycheck. The employer gave the claimant her husband's last check plus a two

> hundred dollar bonus. While they were
> discussing possible insurance coverage,
> the employer told claimant that he had no
> responsibility because the husband had
> died at home." 661 P.2d at 860, 40
> St.Rep. at 571.

We held that the employer was estopped in that circumstance

because:

> "The doctrine of equitable estoppel
> applies where an employer or insurer has
> taken some positive action which either
> prevents a claimant from filing a timely
> claim or leads him reasonably to believe
> he need not file such a claim. [citing
> cases] Equitable estoppel is a flexible
> principle which should be applied when an
> employer or insurer misleads a claimant
> by foisting onto the claimant a
> misinterpretation of the Workers' Compen-
> sation Act." 661 P.2d at 860, 40 St.Rep.
> at 571-572.

We have already held that mere notice of an injury does

not put upon an employer a duty to solicit a claim. The duty

to act first is not on the employer, it is on the employee.

This case involves a fine balancing of respective

duties under the Workers' Compensation Act. On the one hand,

there are the rights of employers to be protected from old

claims that are difficult, or impossible to investigate.

Also at stake is the rule that employers should not be sad-

dled with the duty to actively solicit claims--this involves

more a question of policy than interpretation of law, and we

do not feel the courts are the appropriate place to make this

determination. Finally, we must recognize that a finding of

estoppel brings with it an "attendant implication of bad

faith." Jaeger v. Stauffer Chemical Co. 645 P.2d at 945, 39

St.Rep. at 923.

On the other hand, claimants are at a comparative

disadvantage to employers or insurers in legal sophistica-

tion. This situation gives the employer many opportunities

to mislead. To protect the rights of often innocent

14

employees, we must set down a rule that insures them good faith in relations with employees and claimants.

This case is not an appropriate one to find that the silence as referred to in Lindblom, supra, of an employer estops it from asserting the statute of limitations. First, claimant testified that he had an understanding that he would be protected for the "rest of his life" if he filed the accident report. He did not attribute this understanding to any assertion by the employer or any of its agents. If we were to allow mere understandings to serve as a basis for estoppels, we would be opening the door to a multitude of claims that employers would be hard-pressed to defend against. In this case, the employer was unable to present any evidence, other than by cross-examination, to rebut claimant's understanding. The fairest rule, to all parties would be to require the claimant to be able to attribute the understanding to some assertion of the employer or an agent before an estoppel may arise.

Secondly, claimant's conversation with Mr. Bugni occurred two years after his injury and one year after the statute had run. Claimant does not show how this is relevant. It might be, from an evidentiary standpoint, to back up the claim of an attributable assertion prior to the running of the statute, but no such claim was made and thus, standing on its own, any statement made by Mr. Bugni does not meet the claimant's burden.

Finally, then, we are left with the rule enunciated above. Claimant had a duty to act first. The silence in Lindblom, supra, does not put upon the employer a duty to pursue the employee's claim for him. He knew of the availability of the compensation claim proceeding, as evidenced by the filing of a compensation claim in 1973. As to

15

the 1974 injury, he did not file a compensation claim. It was his mistake. The employer was not put in a situation where it should have spoken out and thus should not be held liable for any silence that occurred.

The order of the Workers' Compensation Court is reversed.

_____
Justice

We concur:

_____

_____
Justices

16

Justice John C. Sheehy, dissenting:

I dissent vigorously from this unjust treatment of an unwary employee who had full reason to trust his employer to protect his compensation rights.

Arthur Wassberg was an employee of Anaconda, off and on since 1956. His employment record indicates that he quit several times as a stope miner because "he didn't like the place." This was not unusual among stope miners in Butte, who frequently relied on their native senses to get out of dangerous places. A high number of graves in the Butte cemeteries are filled with the remains of miners who were not so discriminating. Even so, Arthur Wassberg risked injury at least two too many times.

On June 30, 1973, he was injured in the Steward mine. He fell from the ladder while he was installing stulls (the lumber framework that held back the ever-pending rock). While he was not hospitalized for his injury, he was examined by Dr. West, a Butte chiropractor, and was off work from July 1, 1973 to July 22, 1973 inclusive.

Wassberg gave only verbal notice of his June 30, 1973 injury to his employer. Thereafter the employer did everything necessary for him to obtain his benefits. They provided an employer's first report of occupational injury, prepared by Tom Bugni. They also prepared his claim for compensation to be filed with the Division of Workmans' Compensation. On July 20, 1973, by letter to the then Industrial Accident Board, Bugni, for the Anaconda Company, enclosed to the Industrial Accident Board the employer's first report of injury, the claim for compensation, and two receipts for compensation, showing that Wassberg had been

paid $156 for the period from July 1, 1973 to July 14, 1973 and the further sum of $78 for the period to July 22, 1973.

It is important to note that with respect to the June 30, 1973 injury, all that Wassberg did in order to get full compensation benefits was to give verbal notice to the company. Its agent, Bugni, took care of the rest.

On July 22, 1974, at 10 p.m., a rock fell from the hanging wall of the stope and struck Wassberg on the back. He sustained bruises from the incident. He gave notice of the incident to his shift boss, Newstrand. Newstrand filled out a "report of alleged injury" showing that the incident had been reported to him at 12:30 a.m. on July 22, 1974. (Wassberg was apparently working the nightshift, and the shift boss did not realize that at 12:30 a.m., it was actually July 23, 1974.) Wassberg was not advised to get medical treatment relating to that incident.

On April 17, 1968, Wassberg had been examined by Dr. Gilboy on behalf of the company. The x-ray reports on his examination showed no significant bony abnormality. On March 23, 1977 he was examined by Dr. Jack Davidson on behalf of the Anaconda Company. Dr. Davidson reported that Wassberg suffered pain on bending down his left leg, that he had a sprain in his low back, and had radicular pain down his left leg.

In 1976, Wassberg returned to Bugni. Wassberg felt he was crippled so that he could hardly move. Bugni told him to go to get medical help in connection with his condition. Wassberg went to Dr. Blom and Dr. Davidson, as well as Dr. West. It is reported that the Anaconda Company paid the bills for that medical attention.

It was not until 1982 that Wassberg discovered that the Anaconda Company did not recognize his claim for compensation benefits for his physical injuries. Wassberg testified to his understanding that as long as he filed the "industrial slip" on the hill, that he was covered for the rest of his life as to that injury.

The probable reason that Wassberg made no claim for compensation benefits prior to 1982 is that he continued in employment by the Anaconda Company at various jobs. He continued to work at the Kelly until July 10, 1975 when he was relieved because he "loses too much time." On July 22, 1975 he was reemployed at the Kelly until November 9, 1975 when he was transferred to the leach department of the company. He worked at the leach department until November 28, 1975 when he was let go because of "reduction in force." He was off for approximately four years when he returned to work at the leach plant on September 10, 1979. He was transferred on October 2, 1979 to the Kelley mine where he worked until June 21, 1981 when he was laid off because of a reduction in force.

Unfortunately, the record before us does not indicate what he was doing during the lapse of time from November 28, 1975 until September 10, 1979.

The sole objection of the Anaconda Company to Wassberg's claim, and the reason given by the majority for the decision here, is that his claim is barred by § 39-71-601, MCA, which requires a written claim for compensation within one year of the accident.

Under the records of this case, the Worker's Compensation Court correctly decided that Anaconda was estoppel from raising the bar of § 39-71-601, MCA, by virtue

of our decision in Lindblom v. Employers Liability Assurance Corp. (1930), 88 Mont. 488, 295 P.2d 1007. The finding of the Workers' Compensation Court is as follows:

> "Here the conduct of the employer is as follows: Nestrand knew of claimant's injury, but at not time informed claimant of the need to file a claim. Likewise, when claimant visited with Bugni some two years later, Bugni never advised claimant of the necessity to file a claim, through the evidence clearly shows that the employer knew of claimant's seeking medical care for his injury. Clearly, 1 and 2 of the Lindblom test is met. The claimant believed he had done all that was necessary to file his claim and therefore he clearly did not file a claim, as he was unaware of this necessity. This satisfied number 3. The employer knew, as knowledge is certainly imputed to it through its agents, that the failure of claimant to file a claim within one year would jeopardize or possible preclude his entitlement to benefits. Claimants reliance upon the employer's conduct was in the nature of not acting as opposed to a positive act. Here he did not file a claim though the employer knew of its necessity but failed to inform the claimant of same. As to the sixth criteria, clearly the claimant's failure to file a claim worked to his detriment, as evidence by the fact that the employer now defends against claimant's claim by maintaining he is entitled to no benefits because of claimant's failure to file."

The employment record of Wassberg shows that for more than a full year following the July 22, 1974 accident, he continued to work for the company at various of its properties at Butte. Of course he could have no claim for compensation benefits for that time because he was receiving wages from the company. His layoff on November 28, 1975 was because of reduction in force. Thus we have the seemingly inequitable situation of an employee receiving regular wages during the period of time that he could have presented a written claim to the Workers' Compensation Division for his benefits. A few months after the time for filing his claim expired, he was laid off under a reduction in force.

We apparently have here a situation where the employer, knowing that Wassberg had suffered an industrial accident, had him on the payroll on jobs that he could perform through the period of time that he could have claimed benefits. We have also the further history of the prior industrial accident where the company itself took care of filing all of the necessary papers for the Workers' Compensation Division, including its own report of injury, and the claimant's claim for compensation. These factors speak to me of estoppel.

The element of fraudulent design need not be present to work an estoppel against an employee nor must there be an actual and fraudulent intention to deceive the other party. Lindblom, supra. The Workers' Compensation Court found it enough to establish estoppel that in this case the employer failed to inform the employee of the necessity of filing his claim for compensation benefits. I would sustain the Workers' Compensation Court in its decision on this case and affirm.

John C. Sheehy
_____
Justice