MR. JUSTICE SHEEHY,
dissenting:
I dissent vigorously from this unjust treatment of an unwary em *322 ployee who had full reason to trust his employer to protect his compensation rights.
Arthur Wassberg was an employee of Anaconda, off and on since 1956. His employment record indicates that he quit several times as a stope miner because “he didn’t like the place.” This was not unusual among stope miners in Butte, who frequently relied on their native senses to get out of dangerous places. A high number of graves in the Butte cemeteries are filled with the remains of miners who were not so discriminating. Even so, Arthur Wassberg risked injury at least two too many times.
On June 30,1973, he was injured in the Steward mine. He fell from the ladder while he was installing stulls (the lumber framework that held back the ever-pending rock). While he was not hospitalized for his injury, he was examined by Dr. West, a Butte chiropractor, and was off work from July 1, 1973 to July 22, . 1973 inclusive.
Wassberg gave only verbal notice of his June 30, 1973 injury to his employer. Thereafter the employer did everything necessary for him to obtain his benefits. They provided an employer’s first report of occupational injury, prepared by Tom Bugni. They also prepared his claim compensation to be filed with the Division of Workmans’ Compensation. On July 20, 1973, by letter to the then Industrial Accident Board, Bugni, for the Anaconda Company, enclosed to the Industrial Accident Board the employer’s first report of injury, the claim for compensation, and two receipts for compensation, showing that Wassberg had been paid $156 for the period from July 1, 1973 to July 14,1973 and the further sum of $78 for the period to July 22, 1973.
It is important to note that with respect to the June 30, 1973 injury, all that Wassberg did in order to get full compensation benefits was to give verbal notice to the company. Its agent, Bugni, took care of the rest.
On July 22, 1974, at 10 p.m., a rock fell from the hanging wall of the stope and struck Wassberg on the back. He sustained bruises from the incident. He gave notice of the incident to his shift boss, Newstrand. Newstrand filled out a “report of alleged injury” showing that the incident had been reported to him at 12:30 a.m. on July 22, 1974. (Wassberg was apparently working the nightshift, and the shift boss did not realize that at 12:30 a.m., it was actually July 23, 1974.) Wassberg was not advised to get medical treatment relating to that incident.
On April 17, 1968, Wassberg had been examined by Dr. Gilboy on *323 behalf of the company. The x-ray reports on his examination showed no significant bony abnormality. On March 23, 1977 he was examined by Dr. Jack Davidson on behalf of the Anaconda Company. Dr. Davidson reported that Wassberg suffered pain on bending down his left leg, that he had a sprain in his low back, and had radicular pain down his left leg.
In 1976, Wassberg returned to Bugni. Wassberg felt he was crippled so that he could hardly move. Bugni told him to go to get medical help in connection with his condition. Wassberg went to Dr. Blom and Dr. Davidson, as well as Dr. West. It is reported that the Anaconda Company paid the bills for that medical attention.
It was not until 1982 that Wassberg discovered that the Anaconda Company did not recognize his claim for compensation benefits for his physical injuries. Wassberg testified to his understanding that as long as he filed the “industrial slip” on the hill, that he was covered for the rest of his life as to that injury.
The probable reason that Wassberg made no claim for compensation benefits prior to 1982 is that he continued in employment by the Anaconda Company at various jobs. He continued to work at the Kelly until July 10, 1975 when he was relieved because he “loses too much time.” On July 22, 1975 he was reemployed at the Kelly until November 9, 1975 when he was transferred to the leach department of the company. He worked at the leach department until November 28, 1975 when he was let go because of “reduction in force.” He was off for approximately four years when he returned to work at the leach plant on September 10,1979. He was transferred on October 2, 1979 to the Kelly mine where he worked until June 21, 1981 when he was laid off because of a reduction in force.
Unfortunately, the record before us does not indicate what he was doing during the lapse of time from November 28, 1975 until September 10, 1979.
The sole objection of the Anaconda Company to Wassberg’s claim, and the reason given by the majority for the decision here, is that his claim is barred by section 39-71-601, MCA, which requires a written claim for compensation within one year of the accident.
Under the records of this case, the Worker's Compensation Court correctly decided that Anaconda was estopped from raising the bar of section 39-71-601, MCA, by virtue of our decision is Lindblom v. Employers Liability Assurance Corp. (1930), 88 Mont. 488, 295 P.2d 1007. The finding of the Workers’ Compensation Court is as follows:
“Here the conduct of the employer is as follows: Newstrand knew *324 of claimant’s injury, but at no time informed claimant of the need to file a claim. Likewise, when claimant visited with Bugni some two years later, Bugni never advised claimant of the necessity to file a claim, though the evidence clearly shows that the employer knew of claimant’s seeking medical care for his injury. Clearly, 1 and 2 of the Lindblom test is met. The claimant believed he had done all that was necessary to file his claim and therefore he clearly did not file a claim, as he was unaware of this necessity. This satisfied number 3. The employer knew, as knowledge is certainly imputed to it through its agents, that the failure of claimant to file a claim within one year would jeopardize or possibly preclude his entitlement to benefits. Claimant’s reliance upon the employer’s conduct was in the nature of not acting as opposed to a positive act. Here he did not file a claim though the employer knew of its necessity but failed to inform the claimant of same. As to the sixth criteria, clearly the claimant’s failure to file a claim worked to his detriment, as evidenced by the fact that the employer now defends against claimant’s claim by maintaining he is entitled to no benefits because of claimant’s failure to file.”
The employment record of Wassberg shows that for more than a full year following the July 22, 1974 accident, he continued to work for the company at various of its properties at Butte. Of course he could have no claim for compensation benefits for that time because he was receiving wages from the company. His layoff on November 28, 1975 was because of reduction in force. Thus we have the seemingly inequitable situation of an employee receiving regular wages during the period of time that he could have presented a written claim to the Workers’ Compensation Division for his benefits. A few months after the time for filing his claim expired, he was laid off under a reduction in force.
We apparently have here a situation where the employer, knowing that Wassberg had suffered an industrial accident, had him on the payroll on jobs that he could perform through the period of time that he could have claimed benefits. We have also the further history of the prior industrial accident where the company itself took care of filing all of the necessary papers for the Workers’ Compensation Division, including its own report of injury, and the claimant’s claim for compensation. These factors speak to me of estoppel.
The element of fraudulent design need not be present to work an estoppel against an employee nor must there be an actual and fraudulent intention to deceive the other party. Lindblom, supra. The *325 Workers’ Compensation Court found it enough to establish estoppel that in this case the employer failed to inform the employee of the necessity of filing his claim for compensation benefits. I would sustain the Workers’ Compensation Court in its decision on this case and affirm.